**Louis LOPEZ et al.,**
**Plaintiffs-Appellants,**

v.

**ARROWHEAD RANCHES et al.,**
**Defendants-Appellees.**

No. 73–1243.

United States Court of Appeals,
Ninth Circuit.

Sept. 26, 1975.

James M. Rutkowski (argued), Begam & Lewis, Phoenix, Ariz., for plaintiffs-appellants.

George Carlock (argued), Ryley, Carlock & Ralston, Phoenix, Ariz., for defendants-appellees.

OPINION

Before KOELSCH and SNEED, Circuit Judges, and FIRTH,* District Judge.

PER CURIAM:

Plaintiffs appeal from a judgment of the district court dismissing their action on the ground that their complaint failed to state, and could not be amended to state, a claim. We affirm.

The suit is one for damages. Plaintiffs are citizens or legally admitted

* The Honorable Robert Firth, United States District Judge for the Central District of California, sitting by designation.

alien farm workers. The gravamen of their complaint is the defendants' hiring of farm workers illegally in the United States. They allege, in substance, that the defendants agreed with the illegals to hire and did hire them knowing of their illegal entry and that as a result they, the plaintiffs, have been displaced from jobs, unable to secure work, forced to work at reduced wages and subjected to substandard working conditions.

Plaintiffs assert two separate bases for their claim: (1) the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and (2) the Civil Rights Act, 42 U.S.C. § 1985(3). We conclude that neither is available to plaintiffs.

■ 1. 8 U.S.C. § 1324, the section of the Immigration and Nationality Act upon which plaintiffs particularly rely, in our view, is solely a penal provision and creates no private right of action. We note that the Tenth Circuit has reached this conclusion in *Chavez v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972), *cert. denied*, 409 U.S. 1112, 93 S.Ct. 535, 34 L.Ed.2d 492 (1973), and the rationale appearing in that opinion is the same as that which impels us to so hold. *Accord, Flores v. George Braun Packing Company*, 482 F.2d 279 (5th Cir. 1973). *See Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26, decided June 17, 1975.

■■ 2. 42 U.S.C. § 1985(3) in terms provides a damage remedy to one who is injured by a conspiracy entered into " . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ." In this regard, plaintiffs allege and contend that the defendants discriminated in hiring in favor of "illegals" and against citizens and legally admitted aliens, causing the unemployment or underemployment of the class discriminated against. An effect of that discrimi-

nation, they argue, is to deprive the legal farm workers of Maricopa County, Arizona, of the protections provided by federal minimum wage laws, provisions of the Immigration and Nationality Act, *see* 8 U.S.C. §§ 1101(a)(15)(H)(ii), 1182(a)(14), federal regulations, *see* 20 C.F.R. § 602.10, 29 C.F.R. §§ 60.1–60.6, state health and sanitation laws, and provisions of the Social Security and Internal Revenue Acts, as a result of the depressing effect of the labor competition of the "illegals" who are willing to work under substandard conditions and not in a position to challenge, because of the illegal status, the conditions of employment. We think plaintiffs' construction of the quoted provision is erroneous and overbroad. In this view we rely upon *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). There the Court, recognizing that the statutory language, taken literally, might be construed to give a claim for every conspiratorial tortious interference with a legally protected interest (the equal status being to be protected by law from all intrusions on legal rights), limited the statute's application to conform to the drafter's perceived intent.[1]

"The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. See the remarks of Representatives Willard and Shellabarger, quoted *supra*, at 100. The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a

1. As originally introduced, the bill which became § 1985(3) was a criminal measure outlawing conspiracies with intent "to do any act in violation of the rights, privileges, or immu-

nities of another person. . . ." Cong. Globe, 42d Cong., 1st Sess., App. 68 (1871), quoted in *Griffin* at 100, 91 S.Ct. at 1797.

deprivation of the equal enjoyment of rights secured by the law to all." (Footnotes omitted.) 403 U.S. at 102, 91 S.Ct. at 1798.

The upshot of that position is that the statutory action is restricted to injuries inflicted upon the victim because of his status as a member of an identifiable class; the statutory "purpose to deprive of equal rights" requirement is inferred from the racial or other class[2] motivation underlying the tortious conduct. See Arnold v. Tiffany, 487 F.2d 216 (9th Cir. 1973), at 218 n.1; Note, The Supreme Court, 1970 Term, 85 Harv.L.Rev. 3, 98 n.21 (1971).

Applying those principles, we think plaintiffs' allegations fail to state a claim. In substance they embrace two distinct discriminatory deprivations. The first is the plaintiffs' inability to secure employment because of plaintiffs' disparate treatment vis a vis the "illegals"; the second is the inequality of protection afforded Maricopa County farm workers, legal and illegal, as distinguished from other American workers, as the indirect result of the dilution of working standards occasioned by the hiring of "illegals."

As to the first, assuming that the legality of residence status creates a class cognizable under the Griffin gloss on § 1985(3), the discrimination alleged here cannot give rise to a § 1985(3) claim. To put the matter simply, plaintiffs have no legal right or entitlement either to be hired by the private employers, or to be free of discrimination on the basis of alienage when seeking private employment. The sole potential source of such a legal right of which we are aware, Title VII's proscription of private employment discrimination on the basis of national origin, 42 U.S.C. § 2000e–2(a)(1), has been held not to bar discrimination on the basis of alienage. Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). Having no legal right per se to be free of the discrimination, the conspiracy not to hire plaintiffs' class does not deprive them of the protection of the laws, and hence is not per se actionable under § 1985(3).[3]

2. The Court left open the question in Griffin whether the statute reached class-based deprivations founded on a non-racial class animus—in Griffin the Court found the necessary congressional power in the enforcement clause of the Thirteenth Amendment and pretermitted the question of whether the enforcement clause of the Fourteenth Amendment afforded Congress the power to redress deprivations which cannot be broadly defined as the badges and incidents of slavery, and whether Congress exercised the power. We need not resolve the question here, as in any event no claim is stated.

3. There is an as yet unresolved possibility that § 1985(3) creates substantive rights vis a vis private parties, and not merely a remedy for deprivations of previously defined rights. See Arnold v. Tiffany, supra, at 219; Harvard Note, supra, at 99 et seq.; A Cox, Foreword: Constitutional Adjudication and the Promotion of Human Rights, 80 Harv.L.Rev. 91, 110 et seq. (1966). It may well be that Congress intended to prevent private interference in the exercise of constitutional rights held against the state, and in so legislating intended to prevent private as well as state intrusion on activities such as speech, religion, association, and the like. Moreover, such legislation may well be a necessary and proper exercise of constitutional power under the enforcement clause of the Fourteenth Amendment. Courts are divided on the question. Compare Bellamy v. Mason's Stores, Inc. (Richmond), 508 F.2d 504 (4th Cir. 1974), and Dombrowski v. Dowling, 459 F.2d 190 (7th Cir. 1972), with Action v. Gannon, 450 F.2d 1227 (8th Cir. 1971). See also Westberry v. Gilman Paper Company, 507 F.2d 206 (5th Cir. 1975), opinion withdrawn and vacated as moot, 507 F.2d 216. See Note, Federal Power to Regulate Private Discrimination: The Revival of the Enforcement Clauses of the Reconstruction Era Amendments, 74 Columbia L.Rev. 449, 495 et seq., 510 et seq. (1974). We do not think that a constitutional right to be free from discrimination when seeking public employment coupled with § 1985(3) translates into a right to be free from discrimination when seeking private employment. The benefit of the constitutional right in relation to the state is protected by discrimination-free public hiring and is relatively divorced from private hiring decisions; in that light we think § 1985(3) can at most be read to prohibit discriminatory private interference in public hiring. We decide only the narrow question presented. The reasons underlying a definition of the substantive impact of § 1985(3) may well differ with respect to other constitutional rights, which Congress may have intended to implement against private interference by the statute. Compare

As to the second, plaintiffs do have a legally protected entitlement, when working, to the protection of the various wage and working standard statutes of which they claim to have been deprived by the defendant's conspiracy. Nevertheless, even assuming that plaintiffs were able to prove that but for the defendants' conspiracy they would have been hired, and that a foreseeable and intended result of the hiring discrimination was the circumvention of workers' statutory protections, either by dispensing with the need to hire them or by forcing acquiescence in lower standards, plaintiffs here nevertheless fail to state a § 1985(3) claim under the *Griffin* gloss, because of the lack of the requisite class-based motivation.

■ The alleged discriminatory motivation against citizens and those legally present will not suffice. That discrimination does not aim at creating a disparity in rights between the favored and disfavored class; the alleged animus against legal workers is contradicted by plaintiffs' own allegations that defendants deprive both legal and illegal farm workers of statutory protections in terms applicable to all employees. As *Griffin* narrowed the cases in which a deprivation of equal rights is actionable to those where the injury is class motivated, it seems to us a necessary corollary that the class animus alleged be consistent with the deprivation of rights alleged. Here it is not. Instead, the equality of legal rights denied plaintiffs and "illegals" is equality with all remaining workers who are not victimized by the alleged conspiracy. Of itself, the creation of a class of victims by tortious conduct does not bring a claim within § 1985(3); such a class is created by every tort. Plaintiffs have not and cannot allege, as they must if they would succeed, anything to distinguish them as intended victims other than that they belong to the class possessing the rights deprived—a circumstance true of all potential employees involved. Under *Griffin* we think the class status providing the motivating animus must be created by a fact other than possession of the right deprived—otherwise virtually every conspiratorial deprivation of a primary right would be actionable under § 1985(3) regardless of the pertinent statutory enforcement provisions.

Here, it would appear that the conspiracy was universally directed towards any worker in, or who might come into, the local work force. As we read *Griffin* and the statute's legislative history, § 1985(3) was not intended to provide a remedy to those injured by a conspiracy aimed indiscriminately at all who might be profitably deprived of legal rights— under such circumstances the need for federal protection of minority rights which led to passage of § 1985(3) is far less present.[4]

Affirmed.

---

*Place v. Shepherd*, 446 F.2d 1239 (6th Cir. 1971), and *Ferrer v. Fronton Exhibition Co.*, 188 F.2d 954 (5th Cir. 1951), *with Richardson v. Miller*, 446 F.2d 1247 (3d Cir. 1971).

**4.** While concluding that Congress has not authorized a private civil claim in the circumstances here alleged, we would suggest that such legislation might well provide a worthwhile aid in curbing and discouraging illegal alien immigration.