WESTERN TELECASTERS, INC., a Texas Corporation, et al., Plaintiffs,

v.

CALIFORNIA FEDERATION OF LABOR, AFL–CIO, an unincorporated association, et al., Defendants.

Civ. No. 74–459–GT.

United States District Court,
S. D. California.

March 2, 1976.

Dirk T. Metzger, of Gray, Cary, Ames & Frye, San Diego, Cal., for plaintiffs.

Paul R. Kennerson, of Gibson & Kennerson, San Diego, Cal., for defendants.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GORDON THOMPSON, Jr., District Judge.

The plaintiffs Western Telecasting, Inc., doing business as KCST–39TV, John Wyatt and David R. Owen brought the instant action to recover damages for personal injury to the plaintiffs caused by acts done in furtherance of a conspiracy as defined in 42 U.S.C. § 1985(3).

The complaint, in part, alleges:

Defendants California Federation of Labor, AFL–CIO and IBEW [International Brotherhood of Electrical Workers] conspired to prevent plaintiffs Owen and Wyatt from lawfully exercising their First and Fourteenth Amendment rights and thereby deprived plaintiffs of equal protection of the laws because plaintiffs' employer was a "non-union" entity. In so doing, defendants, and each of them, motivated by a class-based, invidiously discriminatory animus; unlawfully deprived individual plaintiffs as members of a definable class of persons, to wit: employees of a "non-union" employer entity, of the privileges and immunities to which they are lawfully entitled, to wit: the exercise of their First and Fourteenth Amendment rights.

The defendant International Brotherhood of Electrical Workers (IBEW) moved for summary judgment under rule 56 of the Federal Rules of Civil Procedure. Of the multiple grounds urged by defendant IBEW, the court need only consider the applicability of § 1985(3) to the instant cause of action. The section reads as follows:

If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; . . . the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators. 42 U.S.C. § 1985(3).

In *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the Supreme Court held § 1985(3) applicable to a private conspiracy to deprive a black civil rights worker of the equal protection of the law, or of equal privileges and immunities under the law. The Court limited the scope of the statute, stating:

That the statute was meant to reach private action does not, however, mean that it was intended to apply to all tortious, conspiratorial interferences with the rights of others. . . . The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment. (References omitted.) *Id.* at 101–102, 91 S.Ct. at 1798.

In spite of the above-quoted passage, the Court expressly refrained from deciding

whether a conspiracy motivated by an invidiously discriminatory animus, other than racial bias, would be actionable under this provision. Nevertheless, some courts have seized upon the language in *Griffin* and found various private conspiracies actionable under 42 U.S.C. § 1985(3). E. g., *Richardson v. Miller*, 446 F.2d 1247 (3rd Cir. 1971); *Marlowe v. Fisher Body*, 489 F.2d 1057 (6th Cir. 1973); *Action v. Gannon*, 450 F.2d 1227 (8th Cir. 1971) (en banc).

In *Richardson, supra*, the Third Circuit found that the complaint stated a cause of action under § 1985(3), where the plaintiff alleged that the defendants discriminated against the plaintiff by discharging him from his employment because he exercised his First Amendment rights in favor of racial equality. In *Marlowe, supra*, the Sixth Circuit concluded that jurisdiction was proper under § 1985(3); the plaintiff alleged that he had been denied promotion and overtime because of his religion and national origin. The Eighth Circuit, in *Action, supra*, held that a complaint filed by members of a predominantly white Catholic parrish against the Black Liberation Front and Action (an interracial organization) to enjoin the groups from disrupting religious services was cognizable under § 1985(3).

Other courts have been reluctant to extend the scope of § 1985(3) beyond the confines of *Griffin*. The Seventh Circuit, in *Dombrowski v. Dowling*, 459 F.2d 190 (7th Cir. 1972), concluded that an arbitrary discrimination against attorneys who practiced criminal law did not deprive the plaintiff attorney of equal protection and was not actionable. *See also Hahn v. Sargent*, 523 F.2d 461 (1st Cir. 1975); *Richardson v. Miller*, supra.

The Ninth Circuit, in *Lopez v. Arrowhead Ranches*, 523 F.2d 924 (9th Cir. 1975), held that a complaint alleging that the defendants discriminated in hiring in favor of illegal aliens and against citizens and legally admitted aliens, resulting in the unemployment or underemployment of the plaintiffs failed to state a claim under § 1985(3). Without determining whether legal residen-

cy was a class cognizable under the terms of § 1985(3), the court found that the "plaintiffs have no legal right or entitlement either to be hired by private employers, or to be free from discrimination on the basis of alienage when seeking private employment." *Id.* at 927.

The *Lopez* court viewed the complaint as stating an additional discriminatory deprivation:

> [T]he second [discriminatory deprivation] is the inequality of protection afforded Maricopa County farm workers, legal and illegal, as distinguished from other American workers, as the indirect result of the dilution of working standards occasioned by the hiring of "illegals." *Id.*

As to this alleged deprivation, dismissal for failure to state a claim was proper because the requisite "class-based invidiously discriminatory animus" was lacking.

In *Arnold v. Tiffany*, 359 F.Supp. 1034 (C.D.Cal.1973), Judge Pregerson dismissed the complaint of seventeen independent newspaper distributors, alleging that the defendants conspired to deprive the plaintiffs of their right to peaceably assemble in order to form and maintain a newspaper dealers' trade association. The court concluded that an invidious motivating animus was absent, stating:

> A close reading of *Griffin* leads this court to conclude that the words "class-based, invidiously discriminatory animus" refer, at most, to that kind of irrational and odious class discrimination akin to racial bias—such as discrimination based on national origin or religion. *Id.* at 1036.

The Court of Appeals affirmed the lower court and found the allegations in the complaint insufficient to establish the necessary animus under *Griffin*. The court also found that the discriminatory animus was unrelated to the class. "[T]he appellants were not injured because they were newspaper dealers, the class alleged, but because of their activities in attempting to maintain a dealer association." *Arnold v. Tiffany*, 487 F.2d 216, 218 (9th Cir. 1973).

In the instant proceeding, this court is required to determine whether the plaintiffs have shown a "class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge, supra,* 403 U.S. at 102, 91 S.Ct. at 1798. The central inquiry here is whether discrimination against employees of a non-union entity is the kind of invidiously discriminatory motivation the court envisioned in *Griffin.*

█ This court is in complete agreement with the lower court in *Arnold;* the animus behind the conspirators' actions must be akin to racial bias. While discrimination based on national origin or religion may provide the necessary animus, discrimination against employees of a non-union entity does not. If the court were to hold otherwise, nothing would prevent the application of § 1985(3) to all conspiratorial interferences with the rights of others. As the Court recognized in *Griffin,* Congress did not intend to create a general federal tort law by the passage of § 1985(3). In order to effectuate the intent of Congress, the conspirators must be motivated by a class-based, invidiously discriminatory animus. This court cannot so characterize the motivation of these defendants.

Of the cases cited, this court is in agreement with those that have found private conspiracies actionable where the class discrimination was based on racial bias or national origin. *See Marlowe v. Fisher Body, supra* and *Action v. Gannon, supra.* However, § 1985(3) should not be interpreted to encompass all discrimination between classes of persons.

█ In light of the Supreme Court's holding in *Griffin,* this court is constrained to conclude that a complaint alleging discrimination against employees of a non-union entity does not allege an invidiously, discriminatory animus and is not actionable under 42 U.S.C. § 1985(3).

Accordingly,

IT IS THE ORDER OF THE COURT that the defendant's motion for summary judgment be granted.