George H. POIRIER, III, Plaintiff,

v.

Joseph E. HODGES, Ralph D. Gray, and Doe 1, Defendants.

No. 76–12–Civ–Oc.

United States District Court,
M. D. Florida,
Ocala Division.

Feb. 2, 1978.

John L. Riley, St. Petersburg, Fla., Jack F. White, Jr., Clearwater, Fla., for plaintiff.

Charles P. Pillans, III, Bedell, Bedell, Dittmar & Zehmer, Jacksonville, Fla., for defendants.

## OPINION

CHARLES R. SCOTT, Senior District Judge.

Plaintiff brings his claims under 42 U.S.C. §§ 1983, 1985, 1986, and purports to

invoke the Court's jurisdiction under 28 U.S.C. § 1343. He states that in early 1975, he had an agreement with the First Marion Bank of Ocala, Florida, in accordance with which purchase contracts were assigned by plaintiff to the bank. Plaintiff was the seller in the purchase contracts; the bank was the assignee; and the purchase contracts were for hearing aids. Under the purchase contracts, the buyers were to pay for the hearing aids by installment payments.

Plaintiff alleges that defendants are employees of the State of Florida and acted under color of state law. However, he does not indicate the official capacity by which defendants would have engaged in the conduct alleged. Plaintiff charges defendants with engaging in a conspiracy to destroy his business and violate his rights to due process and equal protection under the Fourteenth Amendment. Specifically, he alleges that defendants' conspiracy had as its object (1) to interfere with the contractual obligations of the installment purchase contracts; (2) to defame and destroy plaintiff's business and economic reputation; and (3) to suspend plaintiff's license to engage in business in the State of Florida. Plaintiff alleges that, as acts in furtherance of their conspiracy, defendants (1) contacted two other buyers of hearing aids under the installment purchase contracts, and instructed them not to pay the purchase obligations under the contracts; and (2) contacted the assignee of the contracts, the First Marion Bank of Ocala, telling bank officials that (i) the purchase contracts had been fraudulently obtained and (ii) plaintiff was under investigation and might lose his license to do business in the state. Plaintiff then declares that, as a direct result of defendants conspiracy, and their overt acts in furtherance of it, the First Marion Bank of Ocala reassigned some of the purchase contracts to plaintiff and cancelled further assign-

ment transactions with him. He further states that he has lost customers and suffered injury to his business reputation, because defendants' impaired contractual obligations between himself and the various buyers under the purchase contracts, and between himself and the assignee of those contracts, the First Marion Bank of Ocala.

■■■ Defendants have filed a motion to dismiss the complaint for lack of jurisdiction over the subject matter and failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1), (6). A motion to dismiss for failure to state a remediable claim is warranted only if no matter what set of facts a plaintiff might present, as a matter of law, he could not prove his claim. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957); *Cook & Nichol, Inc. v. Plimsoll Club*, 451 F.2d 505, 506 and n. 1 (5th Cir. 1971); *Barton v. Eustis, Fla.*, 415 F.Supp. 1355, 1357 (M.D.Fla.1976). On a motion to dismiss for lack of jurisdiction, however, the burden remains with the plaintiff to show, assuming the allegations of the complaint to be true, that the limited federal jurisdiction of the Court has properly been invoked. *McNutt v. GMAC*, 298 U.S. 178, 182, 56 S.Ct. 780, 782, 80 L.Ed. 1135, 1137 (1935). The question presented by this motion is whether plaintiff states any claim under 42 U.S.C. §§ 1983, 1985, or 1986, which, if proven true, could be entitled to a remedy from the Court.

### I. The Section 1983 Claim:

A. *U.S. Constitution, Article I, Section 10, and the Impairment of Contractual Obligations.*

■■■ There are two necessary elements for a claim under 42 U.S.C. § 1983 [1]: (1) conduct by a defendant under the authority and color of state law, and (2) deprivation by that conduct of a plaintiff's constitution-

---

1. 42 U.S.C. § 1983 provides:
 Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

al rights. *Gearhart v. Federal Reserve Bank*, 516 F.2d 353, 354 (6th Cir. 1975); *Stene v. Berrisford School Dist.*, 425 F.Supp. 1389, 1390 (D.S.D.1977); *Baron v. Carson*, 410 F.Supp. 299, 301 (N.D.Ill.1976); *Chase v. McMasters*, 405 F.Supp. 1297, 1299 (D.N.D.1975). Historically, § 1983 was intended by Congress to enforce the provisions of the Fourteenth Amendment. *Monroe v. Pape*, 365 U.S. 167, 171, 81 S.Ct. 473, 475–476, 5 L.Ed.2d 492, 496 (1961). The legislative history of the statute indicates that it was enacted pursuant to, and to implement, the Fourteenth Amendment. *Id.* Hence, the Fourteenth Amendment is the "centerpiece" of the statute, *Mitchum v. Foster*, 407 U.S. 225, 238–39, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705, 715 (1972); and the scope of § 1983 is identical with those rights guaranteed by the Fourteenth Amendment. *Monroe v. Pape*, 365 U.S. at 171, 81 S.Ct. at 475–476, 5 L.E.d.2d at 496; *Golden v. Biscayne Bay Yacht Club*, 530 F.2d 16, 18 (5th Cir. 1976) (en banc) *rev'g* 521 F.2d 344 (5th Cir. 1975) and 370 F.Supp. 1038 (S.D.Fla. 1973); *Local 1954, Hanover Township Feder. of Teachers v. Hanover Community School Corp.*, 457 F.2d 456, 461 (Stevens, J.).

 Although the scope of constitutional rights included within the Fourteenth Amendment by incorporation has expanded, the bar against states' enacting laws that impair contractual obligations (U.S.Const., Art. I, Section 10), has never been incorporated into the sphere of Fourteenth Amendment protection. *Spears v. Mt. Etna Morris*, 313 F.Supp. 52, 55 (W.D.Mo.1969), *aff'd sub nom. Spears v. Robinson*, 431 F.2d 1089, 1091 (8th Cir. 1970); *Pudlik v. Public Services Co.*, 166 F.Supp. 921 at 925. Article I, Section 10 of the Constitution is an independent obligation upon the states against enacting legislation that would impair legitimate contractual obligations. It is not, therefore, a part of the "centerpiece" of constitutional rights guaranteed and protected by the Fourteenth Amendment. Consequently, the Court holds that the prohibition in Article I, Section 10 of the Constitution, against impairing legitimate contractual obligations, is not a right redressable under 42 U.S.C. § 1983.

Additionally, the express prohibition of Article I, Section 10 of the Constitution is directed to the states, forbidding them from passing laws that impair contractual obligations. *Hepburn v. Griswold*, 8 Wall. 603, 19 L.Ed. 513 (1870); *Dixon v. Pennsylvania Crime Comm'n*, 67 F.R.D. 425, 432 (M.D.Pa. 1975); *Johnson v. United States*, 79 F.Supp. 208, 211, 111 Ct.Cl. 750 (1948). It is not applicable to mere individual conduct by persons acting under color of state law. In the present case there is not so much as an intimation that defendants participated in, or contributed to, the enactment of state legislation impairing plaintiff's contractual rights and obligation. The Court, therefore, holds that plaintiff has failed to state a remediable claim under § 1983 for an alleged violation of the Contracts Clause, Art. I, Section 10 of the Constitution.

### B. *Stigmatization—Injury to Business Reputation.*

Plaintiff alleges that his business reputation has been injured so that he lost buyers for hearing aids and was unable to assign further purchase contracts to the First Marion Bank of Ocala. In *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the Supreme Court distinguished between mere injuries to reputation alone, and such an injury in connection with the denial of an interest protected by the Due Process Clause of the Fourteenth Amendment. *Id.* at 706, 709, 710–12, 96 S.Ct. at 1163, 1164, 1165–1166, 47 L.Ed.2d at 416–17, 418, 419–20. The Court then held that "the interest in reputation . . . is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law." *Id.* at 712, 96 S.Ct. at 1166, 47 L.Ed.2d at 420. In an earlier decision, *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court had ruled that the posting of a notice in all retail liquor stores in the city, by the chief of police, forbidding sales or gifts of liquor to the plaintiff for a year, violated the Due Process Clause of the Fourteenth Amendment. The Wisconsin statute which permitted such posting, as a

form of written prohibition of liquor to excessive drinkers, was facially invalid for failure to provide fundamental due process. The Supreme Court declared:

> Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. *Id.* at 437, 91 S.Ct. at 510, 27 L.Ed.2d at 519.

The Supreme Court interpreted and clarified that statement in *Paul v. Davis, supra.*

> . . . the italicized language in the last sentence quoted, "because of what the government is doing to him," referred to the fact that the governmental action taken in that case [*Wisconsin v. Constantineau*] deprived the individual of a right previously held under state law . . . 424 U.S. at 708, 96 S.Ct. at 1164, 47 L.Ed.2d at 418.

It was the denial of an interest protected by procedural due process, coupled with the scandalous and defamatory stigma of the posting, that required the basic elements of due process. *Id.* at 708–09, 96 S.Ct. at 1164, 47 L.Ed.2d at 418.

■ Interests protected by procedural due process are (1) property interests created by state law, or (2) liberty interests guaranteed by the Bill of Rights "independently of state law." *Paul v. Davis,* 424 U.S. at 710–11 and n. 5, 96 S.Ct. at 1165, 47 L.Ed.2d at 419 and n. 5. In *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the Supreme Court had held that even without a property interest protected by the Fourteenth Amendment, a public employee whose termination also infringes his constitutional liberties is protected by the Fourteenth Amendment. In *Board of Regents v. Roth,* 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558 (1972), (the companion case to *Perry v. Sinderman, supra,*) the Supreme Court declared that despite the lack of a genuine property interest, if "a person's good name, reputation, honor or integrity is at stake" when he is terminated from employment, he would still be entitled to the fundamentals of basic due process. *See Mt. Healthy City School Dist.*

*Bd. of Educ. v. Doyle,* 429 U.S. 274, 283–284, 97 S.Ct. 568, 573–574, 50 L.Ed.2d 471, 481 (1977). Mere injury to reputation alone, however, is not a liberty or property interest protected by the Fourteenth Amendment's Due Process Clause, *Paul v. Davis,* 424 U.S. at 709, 712, 96 S.Ct. at 1164, 1166, 47 L.Ed.2d at 418, 420. In the absence of an alleged denial of a liberty or property interest entitled to procedural due process, in conjunction with such defamation, there is no claim for stigmatization. *Id.* at 712, 96 S.Ct. at 1166, 47 L.Ed.2d at 420; *Weisser v. Medical Care Systems, Inc.,* 432 F.Supp. 1292, 1295 (E.D.Pa.1977).

■ Those decisions together establish a stigma-plus test that is necessary to assert a claim under § 1983 for denial of due process. *Moore v. Otero,* 557 F.2d 435, 437 (5th Cir. 1977); *Sullivan v. Brown,* 544 F.2d 279, 283–84 (6th Cir. 1976); *Colaizzi v. Walker,* 542 F.2d 969, 973–74 (7th Cir. 1976); *Stretten v. Wadsworth Veterans Hosp.,* 537 F.2d 361, 365–66 (9th Cir. 1976). A plaintiff is not required to prevail ultimately on his assertion of a property or liberty interest; but he must allege the loss of a property or liberty interest that is arguably plausible under state law or the Bill of Rights, in order to state a federal claim for stigmatization of reputation. Unless a plaintiff alleges the infringement of a property interest under state law, or a liberty interest under the Bill of Rights, in conjunction with injury to his reputation, he will not state a claim for stigmatization under § 1983, but at most a state-law claim for defamation, libel or slander. *Paul v. Davis,* 424 U.S. at 712, 96 S.Ct. at 1166, 47 L.Ed.2d at 420.

■ In the present case, plaintiff has not asserted the existence of any property interest created by state law, or any liberty interest guaranteed by the Bill of Rights. Although he alleges that he has been denied equal protection and due process of law, he does not allege the denial of an interest entitled to the protection of the Due Process Clause. Neither does he allege an unreasonably discriminatory restraint of a fundamental right guaranteed by the Four-

teenth Amendment. Article I, Section 10 of the Constitution, forbidding state laws that would impair contractual obligations, is obviously not a property right created by state law; and it is not a freedom ensured by the Bill of Rights. Because plaintiff has not alleged the denial of a plausible property interest created by state law, or of a liberty secured by the Bill of Rights, he has failed to state a federal claim of stigma under § 1983. The Court, therefore, concludes that plaintiff has not stated a remediable claim under 42 U.S.C. § 1983.

## II. The Section 1985(3) Claim.

■ Although plaintiff does not indicate whether defendants' alleged conspiracy was under color of state law, by official conduct as state employees, or was the source of defendants' purely private conduct, for purposes of evaluating the amended complaint's § 1985(3)[2] assertions, it does not matter. In *Griffin v. Breckinridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971), the United States Supreme Court held that § 1985(3) can apply to purely private conspiracies. *Id.* at 101, 91 S.Ct. at 1798, 29 L.Ed.2d at 348. Hence, state action or conduct under state authority is not an essential element of a § 1985(3) claim. *Id.; Cohen v. IIT,* 524 F.2d 818, 828 (7th Cir. 1975) (Stevens, J.); *Bellamy v. Mason's Stores, Inc.,* 508 F.2d 504, 506 (4th Cir. 1974); *Barnes v. Dorsey,* 480 F.2d 1057, 1061 (8th Cir. 1973); *O'Neill v. Grayson County War Mem. Hosp.,* 472 F.2d 1140, 1144 (6th Cir. 1973). To state a claim under § 1985(3), the following four essential elements are required, regardless of whether the defendants' conduct is private or under state authority:

(1) the defendants conspired;

(2) the object, of the conspiracy is for the purpose of depriving, directly or indirectly, any person or class of persons of equal protection of laws or of equal privileges and immunities under the law;

(3) overt acts in furtherance of the conspiracy were committed;

(4) (a) injury to a person or his property, or (b) deprivation of a person's national rights resulted.

*Griffin v. Breckinridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 29 L.Ed.2d 338, 348 (1971); *McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919, 923 (5th Cir. 1977) (en banc), *vac'g in part & aff'g in part,* 526 F.2d 870 (5th Cir. 1976).

*McLellan v. Mississippi Power & Light Co.,* 545 F.2d 919 (5th Cir. 1977) (en banc) is the definitive decision in the Fifth Circuit about private conspiracies under § 1985(3). In that case, the en banc Court of Appeals analyzed the second element of a § 1985(3) claim—the object of the conspiracy. The plaintiff, who has been employed by the defendant utility company, voluntarily filed a petition for bankruptcy, contrary to the company's policies. As a result, the plaintiff was terminated from his employment. He filed suit in federal district court, alleging a private conspiracy to violate the bankruptcy act or his rights under the Constitu-

2. 42 U.S.C. § 1985(3) provides:

Third. If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws, or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

tion. His amended complaint was dismissed for failure to state a remediable claim under 42 U.S.C. § 1985(3).

■ The Fifth Circuit examined the object of private conspiracies for which § 1985(3) would provide a remedy, by using the theory that the object of a conspiracy is "best identified by the acts done in furtherance" of it. *Id.* at 924. Because the plaintiff had not alleged a denial of equal privileges and immunities under law, the Court of Appeals concentrated on private conspiracies whose object was the denial of equal protection of the laws. *Id.* The Fifth Circuit held that a private conspiracy aims at depriving equal protection of the law, under 42 U.S.C. § 1985(3), only if the object of the conspiracy, and the acts done in furtherance of it, would constitute an independent violation of some law other than § 1985(3).

. . . the inquiry must initially concentrate on the legality of the defendants' activity apart from Section 1985(3). If the object of the defendants' conspiracy did not include a violation of some law (independent of 1985(3) itself) which protects the plaintiff, the conspiracy could not have deprived the plaintiff of the "protection of the laws". Put more simply, there can only be a deprivation of the rights of a plaintiff when the action of the defendants is *otherwise* illegal. If the defendants have not conspired to act contrary to the law, an object of a section 1985(3) conspiracy has not been made out and the section is inoperable, regardless of whether the legal rights of the plaintiff are somehow affected. On the other hand, if the defendants have indeed conspired to act contrary to law, the inquiry shifts to whether such conduct was motivated by a class-based bias. *Id.* at 925–26.

In short, the right protected by § 1985(3) against discriminatory private conspiracies is the right to be free from being a victim of independent illegality.

. . . courts often, and quite understandably, speak in terms of the plaintiff's legal rights being abused. This does indeed occur in every successful sec-

tion 1985(3) action. But the legal right referred to in those instances is the right of every person not to be victimized by another's illegal behavior. Section 1985(3) redressed deprivations of the protection of the laws, and one is only deprived of the protection of the laws when the laws themselves have been violated. . No one has the absolute right to complain of every instance in which the action of others infringes upon his own behavior. It is only when that action is unlawful that an individual had legal cause to complain of his injury. . . . the statute was not designed to redress *every* interference with one's behavior, even when that behavior is the exercise of what we describe as a "fundamental right". Instead, . . . the object of a section 1985(3) conspiracy must be to deprive another of the enjoyment of legal rights by independently unlawfully conduct. *Id.* at 927.

To successfully allege the second element of a § 1985(3), therefore, one must assert that a private conspiracy has as its object and overt acts the independent violation of some other legal rights. *Stevenson v. International Paper Co.,* 432 F.Supp. 390, 395 n. 7 (W.D.La.1977).

■ Even if one sufficiently alleges independent illegality as the object and acts of a private conspiracy, however, it is still necessary to allege, regardless of whether a conspiracy is among private individuals or persons acting under color of state law, that the conspiracy was motivated by a class-based bias. The Supreme Court expressly ruled that conspiracies motivated by discrimination against a racial class would satisfy the second element of a § 1985(3) claim. *Griffin v. Breckinridge,* 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348. The Court left undecided whether a conspiracy motivated by some "otherwise class-based, invidiously discriminatory animus" would supply the second essential element of a § 1985(3) claim. *Id.* The Fifth Circuit has refrained from deciding that question as well. *McLellan v. Mississippi Power & Light Co.,* 545 F.2d at 929; *Stevenson v.*

*International Paper Co.,* 432 F.Supp. at 394 n. 2. Nonetheless, the failure to allege a class-based discriminatory animus behind a purported conspiracy is a fatal defect. *McLellan v. Mississippi Power & Light Co.,* 545 F.2d at 928, 931, 933; *Jackson v. Cox,* 540 F.2d 209, 210 (5th Cir. 1976); *Timson v. Wright,* 532 F.2d 552, 553 (6th Cir. 1976); *McNally v. Pulitzer Publ. Co.,* 532 F.2d 69, 74 (8th Cir. 1976); *Means v. Wilson,* 522 F.2d 833, 839–40 (8th Cir. 1975); *Harrison v. Brooks,* 519 F.2d 1358, 1359–60 (1st Cir. 1975); *Glasson v. Louisville,* 518 F.2d 899, 911 (6th Cir. 1977); *Waits v. McGowan,* 516 F.2d 203, 208 (3rd Cir. 1975); *Hamilton v. Chaffin,* 506 F.2d 904, 914 n. 23 (5th Cir. 1975); *Thomas v. Economic Action Committee,* 504 F.2d 563, 564 (6th Cir. 1974); *Cameron v. Brock,* 473 F.2d 608, 610 (6th Cir. 1973); *Puentes v. Sullivan,* 425 F.Supp. 249, 253 (W.D.Tex.1977); *Croy v. Skinner,* 410 F.Supp. 117, 125 (N.D.Ga.1976); *Raitport v. Chase Manhattan Capital Corp.,* 388 F.Supp. 1095, 1099 (S.D.N.Y.1975). The language "equal protection of the laws" and "equal privileges and immunities under the laws." means that an alleged conspiracy "must aim at a deprivation of the equal enjoyment of rights secured by the law to all"—in other words, class-based bias, whether racial or otherwise. *Griffin v. Breckinridge,* 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348. This does not mean that specific intent is required. *Id.* n. 10; *Butler v. United States,* 365 F.Supp. 1035, 1042 (D.Haw.1973). Instead, the conspiracy must simply be animated by a motive rooted in an invidious bias against a specific class.

■ The class of persons against which the conspirators' discriminatory bias is directed must be a clearly defined class. *Cameron v. Brock,* 473 F.2d at 610. A plaintiff must demonstrate a relationship between himself and the other members of the putative class in order to establish his own membership in that class. *Means v. Wilson,* 522 F.2d at 840. Further, the characteristics or attributes that define the class

must (1) be the demonstrated relationship shared by the plaintiff and the other members of that class, and (2) be the motivating focus of the conspirators' discriminatory animus. *Harrison v. Brooks,* 519 F.2d at 1360. This will ensure that the class of person alleged to have been discriminated against is consistent with the specific type of injuries and wrongs which the plaintiff has alleged to have suffered. *Lopez v. Arrowhead Ranches,* 523 F.2d 924 at 928.

■ Nevertheless, the class must be defined by characteristics other than merely being similarly situated to the plaintiff by virtue of being a victim of, and having suffered injuries from, the same tortious conduct that the plaintiff sustained. *Lopez v. Arrowhead Ranches,* 523 F.2d at 928; *Harrison v. Brooks,* 519 F.2d at 1359–60. Otherwise, such an amorphous, fluid, and open-ended class would inevitably enlarge the scope of § 1985 to the kind of unlimited, general federal tort law which the Supreme Court so assiduously avoided. *Griffin v. Breckinridge,* 403 U.S. at 102, 91 S.Ct. at 1798, 29 L.Ed.2d at 348; *Means v. Wilson,* 522 F.2d at 842 (Webster, J., dissenting).

■ If in the present case plaintiff is attempting to charge defendants with engaging in a private conspiracy violating § 1985(3), he has not alleged himself to be the victim of a conspiratorial object and acts which are an independent violation of some legally protected right other than § 1985(3). Moreover, whether plaintiff asserts that defendants conspired as private individuals, or as persons acting under official color of state authority, he has not alleged himself to have been the victim of such a conspiracy because of his membership in a specific class against which defendants were biased and discriminated. The Court, therefore, holds that plaintiff has failed to state a claim under § 1985(3).

### III. *Section 1986 Claim.*

■ The derivative character of a claim under 42 U.S.C. § 1986 [3] is universally rec-

---

**3.** 42 U.S.C. § 1986 provides in pertinent part: Every person who, having knowledge that any of the wrongs conspired to be done, and men-

tioned in the preceding section [42 U.S.C.S. § 1985], are about to be committed, and having power to prevent or aid in preventing the com-

ognized. Only if a § 1985 claim is stated can there also be a § 1986 claim. *Taylor v. Nichols,* 558 F.2d 561, 568 (10th Cir. 1977), aff'g 409 F.Supp. 927, 936 (D.Kan.1976); *Kermit Constr. Corp. v. Banco Credito Y Ahorro Ponceno,* 547 F.2d 1, 3 (1st Cir. 1976); *Hamilton v. Chaffin,* 506 F.2d 904, 914 (5th Cir. 1975); *Dowsey v. Wilkins,* 467 F.2d 1022, 1026 (5th Cir. 1972); *Azar v. Conley,* 456 F.2d 1382, 1385 n. 2 (6th Cir. 1972); *Rowe v. Tennessee,* 431 F.Supp. 1257, 1259 n. 1 (E.D.Tenn.1977); *Martin Hodas E. Coast Cinematics v. Lindsay,* 431 F.Supp. 637, 645 (S.D.N.Y.1977); *Schoone v. Olsen,* 427 F.Supp. 724, 725 (E.D.Wis.1977); *Shore v. Howard,* 414 F.Supp. 379, 388 (N.D.Tex.1976); *Weaver v. Haworth,* 410 F.Supp. 1032, 1036 (E.D.Okl.1975); *Schoonfield v. Mayor & City Council of Baltimore,* 399 F.Supp. 1068, 1087 (D.Md.1975), aff'd 544 F.2d 515 (4th Cir. 1976); *Slegeski v. Ilg,* 395 F.Supp. 1253, 1255–56 (D.Conn.1975); *Shaw v. Garrison,* 391 F.Supp. 1353, 1370 (E.D.La.1975), aff'd 545 F.2d 980 (5th Cir. 1977); *Hahn v. Sargent,* 388 F.Supp. 445, 449–50 (D.Mass.1975), aff'd 523 F.2d 461, 469–70 (1st Cir. 1975), cert. den. 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *Johnston v. NBC,* 356 F.Supp. 904, 909–10 (E.D.N.Y.1973); *Post v. Payton,* 323 F.Supp. 799, 802 (E.D.N.Y.1971); *Huey v. Barloga,* 277 F.Supp. 864, 875 (N.D.Ill.1967); *Selico v. Jackson,* 201 F.Supp. 475, 476 (S.D. Calif.1962).

The Court has already held that plaintiff has failed to state a remediable claim under § 1985(3). Consequently, he has failed to state a claim under § 1986 as well.

The motion to dismiss must be granted for lack of a claim under § 1983, § 1985(3), or § 1986 upon which the Court could grant relief; and it will be so ordered.

mission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; . . .