**Jake LAPIN, Plaintiff,**

v.

**Jeffrey M. TAYLOR, Defendant.**

**Civ. No. 78–0337.**

United States District Court,
D. Hawaii.

July 31, 1979.

Jake Lapin, pro se.

William H. Dodd, Stephen T. Robinson, Honolulu, Hawaii, for defendant.

**ORDER MODIFYING ORDER OF DISMISSAL AND GRANTING LEAVE TO AMEND COMPLAINT**

SAMUEL P. KING, District Judge.

On September 5, 1978, plaintiff Jake Lapin, a citizen of Hawaii, filed this lawsuit

against Jeffrey M. Taylor, Esq., a local attorney who represented a brokerage firm, Wedbush, Noble, Cooke, Inc., and one of its investment executives, Gregory F. Kowal, in another lawsuit brought by Lapin in this Court (Civil No. 77–0421). In the instant case, plaintiff alleges that, during the course of defendant's representation of his clients in Civil No. 77–0421, defendant Taylor, *inter alia,* removed from the plaintiff's Department of Labor medical file at least 20 confidential documents that are privileged under the Privacy Act. 5 U.S.C. §§ 552 and 552a.[1] Plaintiff alleges that this removal of the documents was accomplished under false pretenses and by perpetrating a fraud upon this Court and that these documents were to be used to attack the reputation, character and credibility of the plaintiff.[2] The complaint contends that the alleged acts of defendant violated plaintiff's civil rights contrary to the Civil Rights Acts, 42 U.S.C. §§ 1981–1995, and that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

On March 19, 1979, defendant filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure on the grounds that: (1) the complaint filed herein fails to state a claim against defendant upon which relief can be granted; and (2) this Court lacks subject matter jurisdiction over the complaint filed herein. On May 25, 1979, plaintiff filed a memorandum in opposition to defendant's motion. Plaintiff argued that his complaint includes claims under the Privacy Act, 5 U.S.C. § 552a(i)(3), and the Civil Rights Act of 1861, 42 U.S.C. §§ 1985 and 1986, and that this Court has jurisdiction pursuant to 5 U.S.C. §§ 552a(i)(3) and 7102, 28 U.S.C. §§ 1331 and 1343, and the common law of torts. A hearing was held on June 4, 1979.

On June 5, 1979, an Order of Dismissal was filed which held that plaintiff had failed to state a federal claim pursuant to either the Privacy Act or the Civil Rights Act of 1861. It was therefore ordered that plaintiff's action be dismissed with prejudice as to the federal claims and without prejudice as to the pendent state claims.[3]

On June 12, plaintiff filed a Motion for Reconsideration of the Order of Dismissal in light of two recent Ninth Circuit cases that elucidate the requirements of a § 1985(3) claim: *Life Insurance Company of*

---

1. Plaintiff also contended that defendant:
   (a) "Informed the Court that Plaintiff, Jake Lapin, was obstructing justice by keeping him from deposing certain information from the employees of the Naval Audit Office" when this was untrue;
   (b) Informed the Court that he would submit affidavits from certain employees of the Naval Audit Office when in fact he could not get the affidavits signed because the information therein was false;
   (c) "[J]oined forces with certain employees of the Naval Audit Office, Honolulu desirous of attacking Plaintiff's, Jake Lapin's, credibility, reputation, and character for the purpose of having certain Counts in Civil No. 77–0421 dismissed by this Court;"
   (d) Refused to accept a reasonable settlement offer and instead "continued the suit in such a manner that indicated an objective of initiating a reprisal abuse-of-process suit against the Plaintiff;"
   (e) Requested plaintiff to stipulate that certain counts of plaintiff's complaint were dismissed with prejudice when this was untrue.
   Plaintiff also alleged
   [t]hat Wedbush, Noble, Cooke, Inc., through action by one of its employees, joined forces with the Naval Audit Office, Honolulu, which was desirous of attacking the reputation, character, and credibility of the Plaintiff, Jake Lapin, in order to prevent his restoration to duty, and provided to the Naval Audit Office, Honolulu certain false information which was used in an attempt to attack the reputation, character, and credibility of the Plaintiff."
   Nevertheless, Jeffrey Taylor was the only named defendant in this action.

2. Plaintiff also alleged in oral argument that these documents might be used to hinder his attempt to regain his federal job. *See* note 8 *infra.*

3. The Order of Dismissal noted that:
   [P]laintiff has brought several common law tort claims herein, including invasion of privacy, abuse of process and defamation of character. Because of the disposition of plaintiff's federal claims, it is inappropriate for this Court to retain jurisdiction over any pendent state law claims. These claims will be dismissed without prejudice to enable plaintiff to pursue them in state court.

*North America v. Reichardt,* 591 F.2d 499 (9th Cir. 1979) and *DeSantis v. Pacific Telephone & Telegraph Co.,* 608 F.2d 327 (9th Cir. 1979). Because neither of these cases had been raised nor argued by either side at the June 4 hearing, I requested that each party brief these cases. A second hearing was held on July 20. In light of the teaching of these cases, I conclude that plaintiff can state a federal cause of action under § 1985(3).

■ Plaintiff first alleges that he raises claims under 5 U.S.C. § 552a(i)(3) over which this Court has jurisdiction pursuant to 5 U.S.C. § 552a and 28 U.S.C. § 1331. This statute provides that: "[a]ny person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses shall be guilty of a misdemeanor and fined not more than $5,000." This argument is unpersuasive. I conclude that this section of the Privacy Act is solely a penal provision and creates no private right of action. *Rowe v. Tennessee,* 431 F.Supp. 1257, 1264 (E.D.Tenn.1977); *see Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975); *cf. Lopez v. Arrowhead Ranches,* 523 F.2d 924, 926 (9th Cir. 1975) (a similar section of the Immigration and Nationality Act, 8 U.S.C. § 1324, was held to be solely a penal provision that creates no private right of action).[4]

■ Plaintiff next contends that his complaint states a cause of action pursuant to 42 U.S.C. §§ 1985 and 1986. An examination of these provisions indicates that § 1985(3) is the only one which plaintiff's complaint could conceivably satisfy.

In order to state a claim under § 1985(3) a complaint must allege that the defendants did (1) "conspire or go in disguise on the highway or on the premises of another" (2) "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." It must then assert that one or more of the conspirators (3) did, or caused to be done, "any act in furtherance of the object of [the] conspiracy," whereby another was (4a) "injured in his person or property" or (4b) "deprived of having and exercising any right or privilege of a citizen of the United States."

*Griffin v. Breckinridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–1799, 29 L.Ed.2d 338 (1971). The *Griffin* Court concluded that the statute was meant to cover private conspiracies but it was not "intended to apply to all tortious, conspiratorial interferences with the rights of others." *Id.* at 101, 91 S.Ct. at 1798. Consequently, the Court interpreted the second element of the cause of action in a way that would give full effect to the congressional purpose.

The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action. The conspiracy, in other words, must aim at a deprivation of the equal enjoyment of rights secured by the law to all.

*Id.* at 102, 91 S.Ct. at 1798 (footnotes omitted).

The *Griffin* Court did not explain what might be considered a deprivation of equal protection by private persons. *See id.* at 97, 91 S.Ct. 1790. The Ninth Circuit has held that "the first requirement of [the] second element of § 1985(3) [requires] the deprivation of any legally protected right." *Life Insurance Company of North America v. Reichardt,* 591 F.2d 499, 503 (9th Cir. 1979). "In *Lopez v. Arrowhead Ranches,* 523 F.2d 924, 926, (9th Cir. 1975), this court explained *Griffin* as creating a cause of action for any tortious interference with a legally protected right if motivated by the requisite class-based animus . . . ." *Reichardt,* 591

---

4. Plaintiff also asserts that jurisdiction will lie pursuant to 5 U.S.C. § 7102. This provision proscribes interference with or denial of the right of employees to petition Congress or Members of Congress and to furnish information to either House of Congress. This provision is also of no help to plaintiff.

F.2d at 503. Plaintiff herein satisfies this first requirement by alleging the tortious interference of his right to privacy.[5]

Because *Griffin* dealt with allegations by blacks of a conspiracy to deprive them of their civil rights, the Supreme Court did not articulate what non-racial "class-based, invidiously discriminatory animus" would be actionable under § 1985(3). The Ninth Circuit has held that the coverage of § 1985(3) is to be determined by the "principle underlying its adoption: the Governmental determination that some groups require and warrant special federal assistance in protecting their civil rights." *DeSantis v. Pacific Telephone & Telegraph Company*, 608 F.2d 327 at 331 (9th Cir. 1979).[6] Such a "Governmental determination" can be made by either the federal courts or Congress. *See id.*[7]

Plaintiff contends that he is a member of the "whistle blower" class (*viz.*, "Federal employees who disclose illegal or improper government activities")[8] and that this class is within the ambit of § 1985(3) protection. Plaintiff asserts that the requisite "Governmental determination" of warranted "special federal assistance" is incorporated in the Civil Service Reform Act of 1978 whereby Congress created the Merit Systems Protection Board to protect whistle blowers. 5 U.S.C. §§ 1201–09 (1978).

I find plaintiff's argument to be persuasive. The legislative history of this statute clearly indicates that Congress concluded that federal employees who are whistle blowers need special protection.[9] This Congressional determination satisfies the Ninth Circuit test for class-based, invidiously discriminatory animus actionable under

5. The complaint also alleged that defendant acted to deprive plaintiff of his federal right to contract. *See* note 1 *supra*. Plaintiff relies upon the Constitutional language of Article I, Section 10, stating that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts" as the basis for a federal right to contract. I am unfamiliar with any authority that supports the existence of this purported federal right. Nevertheless, plaintiff's allegations sound in tort and would form the basis of several pendent state law claims. *See* note 3 *supra*.

6. The Ninth Circuit noted that "[t]he forerunner of § 1985(3) . . . was intended to provide special federal assistance to southern blacks and their allies in protecting their rights under the Fourteenth Amendment and other reconstruction legislation against the Ku Klux Klan and others organized to thwart reconstruction efforts." *DeSantis*, at 331.

7. The *Reichardt* Court held that plaintiffs alleging a conspiracy to deprive women of equal rights could invoke § 1985(3). The Court noted several federal court-made determinations that "gender-based classifications may result in invidious discrimination." 591 F.2d at 505. The Court could also have relied upon the Congressional prohibition against sex discrimination of Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 2000e *et seq.* Conversely, the *DeSantis* Court held that homosexuals were not a "class" within the meaning of § 1985(3). After examining the applicable case law and Congressional legislation, the court concluded that "it cannot be said that homosexuals have been

afforded special federal assistance in protecting their civil rights." *DeSantis*, at 331.

8. Although plaintiff is not currently employed by the federal government, most of his "whistle blowing" activities occurred while he was a naval auditor at Pearl Harbor prior to his resignation in 1976. He is currently involved in administrative proceedings in an attempt to get his job back.

9. The Senate Report stated that this statute gives the Merit Systems Protection Board and the Special Counsel explicit authority to protect whistle blowers—Federal employees who disclose illegal or improper government activities. Often, the whistle blower's reward for dedication to the highest moral principles is harassment and abuse. Whistle blowers frequently encounter severe damage to their careers and substantial economic loss.

Protecting employees who disclose government illegality, waste, and corruption is a major step toward a more effective civil service. . . .

[This statute] will establish significant protections for whistle blowers. For the first time, and by statute, the Federal Government is given the mandate—through the Special Counsel of the Merit Systems Protection Board—to protect whistle blowers from improper reprisals.

S.Rep.No. 969, 95th Cong., 2d Sess. 8, *reprinted in* [1978] U.S. Code Cong. & Admin. News, pp. 2723, 2730.

§ 1985(3).[10]  Therefore, I conclude that whistle blowers as defined herein are a "class" within the meaning of § 1985(3).[11]

■ Nevertheless, plaintiff's complaint fails to properly state a claim under § 1985(3).  The first defect is that plaintiff fails to allege that defendant was involved in a conspiracy to deprive him of his right to privacy or any other legally protected right.[12]  Secondly, plaintiff failed to specifi-

10. The constitutionality of this interpretation of § 1985(3) has not yet been determined.  The *DeSantis* Court did not have to reach that issue because of its conclusion that homosexuals did not satisfy the Ninth Circuit test.  In *Reichardt*, the plaintiffs argued that both the Commerce Clause and section 5 of the Fourteenth Amendment authorize Congress to reach the alleged invidious discrimination against women.  The *Reichardt* Court, however, specifically refused the resolve this issue because the appeal was interlocutory and the question had neither been addressed nor certified by the district court.

The *Reichardt* Court cited several decisions from other circuits that have interpreted § 1985(3) more broadly and "have not limited its protection to racial or otherwise suspect classifications."  591 F.2d at 505 (footnote omitted); *see Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975) (political opponents are a sufficient class); *Cameron v. Brock*, 473 F.2d 608 (6th Cir. 1973) (supporters of a political candidate); *Azar v. Conley*, 456 F.2d 1382 (6th Cir. 1972) (a single family); *Harrison v. Brooks*, 446 F.2d 404 (1st Cir. 1971) (married couple).  Nevertheless, none of these decisions even address the issue of the constitutionality of their expansive interpretations of § 1985(3).

The constitutionality of the extension of § 1985(3) coverage to federal employee whistle blowers might be derived from the same constitutional provision that authorized the enactment of the Civil Service Reform Act of 1978.  Neither the Act nor its legislative history specifically states the constitutional provision that authorizes its enactment.  *See* Pub.L. No. 95–454, 92 Stat. 1111 (1978); S.Rep. No. 969, 95th Cong., 2d Sess. *reprinted in* [1978] U.S. Code Cong. & Admin. News, p. 2723; H. Conf. Rep. No. 1717, 95th Cong., 2d Sess. *reprinted in* [1978] U.S. Code Cong. & Admin. News, p. 2860.  Nevertheless, the source of Congressional power for passing this law is probably the "necessary and proper clause" of the Constitution.  U.S. Const., Art. I, § 8, cl. 18; *cf. Butler v. White*, 83 F. 578 (C.C.W.Va.1897), *reversed on other grounds*, 171 U.S. 379, 18 S.Ct. 949, 43 L.Ed. 204 (1898) (the establishment of the Civil Service Commission is within the general powers conferred upon Congress by the necessary and proper clause of the Constitution).  In any event, the constitutionality of this statute does not necessarily imply that the extension of § 1985(3) coverage to federal employee whistle blowers is also constitutional.  The protection afforded whistle blowers by this new statute is from reprisals by *other federal employees*.  If the underlying constitutional authority for the Congressional enactment of this statute in-

cludes the power to protect federal employees from reprisals, then it should also justify an interpretation of § 1985(3) that similarly protects them from private conspiracies; however, if this Congressional power only extends to restraining federal employees from taking retaliatory actions, then it will be necessary to find another source of constitutional power for this § 1985(3) interpretation.  In any event, this constitutional question should be addressed only after a trial on the merits because of the advantages of having a full record and the possibility that a judgment for defendant would make it unnecessary to reach the question.  *Reichardt*, 591 F.2d at 506.

11. This decision specifically does not address the question of whether whistle blowers who are not employed by the federal government are within the ambit of § 1985(3) protection.  In order to satisfy the Ninth Circuit test, it will be necessary for them to find another "Governmental determination" that they need special federal protection of their civil rights because the Civil Service Reform Act of 1978 does not extend to them.  Furthermore, the constitutional justification for such an interpretation of § 1985(3) probably could not be derived from the Congressional authority to enact that Civil Service legislation.  *See* note 10 *supra*.

12. There are only two instances in the complaint where a possible conspiracy allegation is even elliptically alluded to by plaintiff.  In paragraph 12 of his complaint, plaintiff alleges that defendant "joined forces with certain employees of the Naval Audit Office, Honolulu desirous of attacking the Plaintiff's  .  .  . credibility, ·reputation and character for the purpose of having certain Counts in Civil No. 77–0421 dismissed by this court."  *See* note 1 *supra*.  Although this allegation might be interpreted to allege a conspiracy, its alleged purpose was not to deprive plaintiff of any legally protected right.  In paragraph 8 of his complaint, plaintiff alleges "[t]hat Wedbush, Noble, Cooke, Inc., through action by one of its employees, joined forces with the Naval Audit Office  .  .  .  in order to prevent his restoration to duty, and provided to the Naval Audit Office  .  .  .  certain false information which was used in an attempt to attack the reputation, character, and· credibility of the Plaintiff."  *See* note 1 *supra*.  Although this allegation also alludes to a conspiracy, it is unclear how, if at all, defendant is involved in

cally allege that the actions of the conspirators were motivated by an invidiously discriminatory animus against him as a federal employee whistler blower. Thus, the original complaint still fails to state a claim under § 1985(3) or any other statute and should be dismissed; however, because these defects could be cured, it is appropriate in this instance to grant plaintiff leave to amend his complaint. I conclude that the Order of Dismissal entered on June 5 should be modified to grant plaintiff 60 days from the entry of this order to amend his complaint.

It is so ordered.

this activity. Furthermore, it is difficult to make any assumptions in this regard because

Taylor is the only defendant named in the complaint.