**Linda Kay SULLIVAN,**
**Plaintiff-Appellant,**

v.

**George BROWN et al.,**
**Defendants-Appellees.**

No. 75–2269.

United States Court of Appeals,
Sixth Circuit.

Argued June 17, 1976.

Decided Oct. 19, 1976.

letter of reprimand containing three allegations which had been admitted by her, a conference report containing certain unresolved allegations and students' statements were all placed in her personnel file. Chief District Judge Bailey Brown concluded that plaintiff was neither deprived of a "property" interest nor a "liberty" interest under the standards announced in *Roth* or *Sindermann.* The District Court further concluded that plaintiff was present at several conferences conducted to investigate the allegations, and these conferences were sufficient to comply with due process requirements. We affirm the District Court on the basis that the facts of the instant case establish neither a "property" interest nor a "liberty" interest protected by the due process clause.

Russell X. Thompson, Memphis, Tenn., for plaintiff-appellant.

Ernest G. Kelly, Jr., Evans, Petree, Cobb & Edwards, Memphis, Tenn., for defendants-appellees.

Before PHILLIPS, Chief Judge, and EDWARDS and ENGEL, Circuit Judges.

PHILLIPS, Chief Judge.

The question present on this appeal is whether the transfer of a tenured school teacher from one school to another, with no reduction in compensation, based upon various unresolved allegations that are made a part of her permanent record, constitutes a fourteenth amendment due process violation under *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).

Plaintiff Sullivan is a tenured public school teacher employed by the Memphis, Tennessee, school system. In May, 1974, she was subjected to an investigation of her conduct as a teacher at Kingsbury High School. As a result, she was suspended temporarily, reprimanded and transferred to Oakhaven High School. Additionally, a

I.

On May 2, 1974, there was a small disturbance in one of plaintiff's classes which caused plaintiff to send a student to the principal's office. There, this student made certain charges against plaintiff, that, in conjunction with other matters, prompted the principal, William Taylor, to request a conference before the Director of Certified Personnel, James Pendergrast, to discuss the situation with plaintiff. The conference was set for the afternoon of May 6, 1974. However, the principal did not inform plaintiff of the conference until the morning of May 6. The District Court found that the principal had a "well-founded fear" that if he informed plaintiff of the conference prior to May 6, she would enlist student support and cause a disturbance at the school. Plaintiff was not informed at that time of the charges against her. She was instructed not to report to school that day, and that she was to be present at Pendergrast's office that afternoon.

During the conference, Taylor informed plaintiff of the several complaints that he had received, and plaintiff was allowed to respond to each of them. Although plaintiff denied several of the charges, the District Court found that she admitted the

accuracy of three of them: 1) the discussion by her of sex related topics in her classes; 2) excessive tardiness on her part; and 3) her use of profanity in the presence of students. Pendergrast informed each party that he would consider the matter and render a decision shortly. He told the principal, however, that the allegations would have to be supported with proof. Plaintiff similarly was informed that she could supply additional proof to rebut the allegations. Plaintiff was instructed not to return to Kingsbury until a decision had been made.

On May 7, 1974, after the principal was approached by several students concerning plaintiff's absence, he decided to have an assembly of plaintiff's students at the school auditorium. The District Court found that the purpose of this assembly was to dispel any rumors about the situation and to ascertain whether other students were aware of plaintiff's alleged conduct. After the principal had told the students the purpose of the meeting, he wrote the complaints against plaintiff on a blackboard, and he asked those students who had observed the alleged conduct to raise their hands. The principal had three assistants present. One took notes of the meeting while the other two maintained order and counted the number of students who raised their hands.

On May 9, 1974, plaintiff received a letter from Superintendent of Schools John Freeman, formally advising her that she was suspended with pay pending the investigation of the complaints against her.[1] That same day, plaintiff submitted to Pendergrast a ten page document rebutting or explaining the complaints raised by the principal. She also submitted several letters from students and their parents supporting her position. The principal transmitted to Pendergrast several letters from students that supported the allegations made. On May 14, 1974, after reviewing all the evidence, Pendergrast sent plaintiff a letter informing her of his decision that she was guilty of the following offenses:

1. Conduct unbecoming a member of the teaching profession by use of profanity in front of students.

2. Neglect of duty by repeated tardiness and failure to report on time to rehearsals and to the Thespian banquet.

3. Insubordination—discussion of controversial subjects with students after having been specifically instructed not to do so by the principal.

The May 14 letter informed plaintiff that she would be transferred immediately to another high school and an official letter of reprimand would be placed in her personnel file.[2] The record indicates that in addition to the letter of reprimand, the conference report containing copies of the allegations and the statements from students also was placed in plaintiff's personnel file.

Subsequently, plaintiff appealed Pendergrast's decision to the Assistant Superintendent, Department of Personnel Services, Lee Thompson. After having three conferences with plaintiff, Thompson, on August 12, 1974, decided to uphold the decision rendered by Pendergrast. That decision subsequently was appealed to Superintendent of Schools, John Freeman. Freeman rendered a decision on August 19, 1974, upholding the conclusions of Pendergrast and Thompson.

1. T.C.A. § 49–1413 provides as follows:

   **Suspension pending investigation.**—A superintendent may suspend a teacher at any time that may seem necessary, pending investigation or final disposition of a case before the board or an appeal, provided that if the teacher is vindicated or reinstated he shall be paid the full salary for the period during which he was suspended. [Acts 1951, ch. 76, § 6 (Williams, § 2345.6).]

2. T.C.A. § 49–1411 provides as follows:

   **Transfers within system.**—The superintendent, with the approval of the board, when necessary to the efficient operation of the school system, may transfer a "teacher" from one location to another within the school system, or from one type of work to another for which he is qualified and certificated. Such a transfer can be made only by the concurrent action of the superintendent and the board. [Acts 1951, ch. 76, § 10 (Williams, § 2345.10); 1957, ch. 202, § 1; 1965, ch. 196, § 1; 1969, ch. 286, § 1; 1970 (Adj. S.), ch. 480, § 1.]

Plaintiff also was informed on at least two occasions of her right to appeal to the Board of Education. This right was never exercised. In event of an adverse decision by the Board, she would have been entitled to a judicial review de novo in the State Chancery Court. T.C.A. § 49–1417.

Plaintiff argues that she has been deprived of a substantive due process right involving her good name, her honor, her integrity and her personal as well as her professional reputation, without being afforded the minimum requirements of procedural due process. The only relief that she seeks is the expunction of all information relative to the reprimand and transfer, maintained in her personnel file, until such time as she has been afforded a hearing that meets minimum due process requirements.

■ In an opinion by Circuit Judge John Paul Stevens in *Jeffries v. Turkey Run Consolidated School District*, 492 F.2d 1 (7th Cir. 1974), the court held as follows:

> The Fourteenth Amendment prevents the state from depriving any person of liberty or property without due process of law. As *Roth* squarely holds, the right to procedural due process is applicable only to state action which impairs a person's interest in either liberty or property. *Certainly the constitutional right to "substantive" due process is no greater than the right to procedural due process. Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument.*

(Emphasis added.) 492 F.2d at 4.

Without a "property" or "liberty" interest protected by the due process clause, plaintiff would have no federally protected right, even if it be assumed that the statement of reasons or charges placed in her personnel file were false. Rather, her right of action would exist exclusively in state courts. *See, Ryan v. Aurora City Board of Educ.*, 540 F.2d 222 (6th Cir. 1976). The Supreme Court commented on this question

in *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976):

> Indeed, the impact on petitioner's constitutionally protected interest in liberty is no greater even if we assume that the City Manager *deliberately lied. Such fact might conceivably provide the basis for a state law claim, the validity of which would be entirely unaffected by our analysis of the federal constitutional question.*

*Id.* at 349 n. 13, 96 S.Ct. at 2080 n. 13 (emphasis added).

## II.

■ Therefore, it is necessary to determine whether on the facts of this case, transfer pursuant to T.C.A. § 49–1411 amounts to a deprivation of a "property" interest within the meaning of *Roth, supra.*

Whether or not a "property" interest exists depends not upon the Constitution but upon "independent sources such as state law". *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. *See also Bishop, supra,* 426 U.S. at 344, 96 S.Ct. 2074. There can be no doubt under Tennessee law that the transfer of a tenured teacher, pursuant to T.C.A. § 49–1411, does not amount to a deprivation of a "property" interest within the meaning of *Roth, supra* and *Sindermann, supra. See, Coe v. Bogart,* 519 F.2d 10, 12 (6th Cir. 1975). *See also Lipp v. Board of Educ.,* 470 F.2d 802, 805 n. 5 (7th Cir. 1972); *Mitchell v. Garrett,* 510 S.W.2d 894, 897–98 (Tenn. 1974); *State ex rel. Pemberton v. Wilson,* 481 S.W.2d 760, 769 (Tenn.1972); *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956). In *Coe,* this court held:

> The above-cited statutes make it manifestly clear that the Tennessee legislature, in enacting the Teacher Tenure Act, did not intend that a teacher or principal have an entitlement to the specific job to which he is assigned. See *State v. Yoakum,* 201 Tenn. 180, 297 S.W.2d 635 (1956). In such circumstances we would be loath to hold that Coe had a constitutional "property" right in his position since, as noted earlier, we do not believe that plaintiff's federal constitutional

rights are necessarily co-extensive with his rights under the Act. We thus conclude that Judge Taylor correctly dismissed the claim. 519 F.2d at 12.

Accordingly, appellant's transfer and recorded reprimand did not deprive her of a "property" interest protected by the fourteenth amendment.

### III.

■ The final question to be determined is whether the facts of the instant case establish the existence of a "liberty" interest. The concept of "liberty" recognizes two particular interests of a public employee: 1) the protection of his or her good name, reputation, honor and integrity; and, 2) his or her freedom to take advantage of other employment opportunities. *Roth, supra,* 408 U.S. at 573–74, 92 S.Ct. 2701. The charges made must be of such a nature as to damage seriously his or her standing and associations in the community. *Id.* at 573, 92 S.Ct. 2701.

The Supreme Court held recently in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), that mere defamation by a state or local official is not sufficient to establish a claim under § 1983 and the fourteenth amendment. The Court said:[3]

> Thus it was not thought sufficient to establish a claim under 42 U.S.C. § 1983 and the Fourteenth Amendment that there simply be defamation by a state official; *the defamation had to occur in the course of the termination of employment.* Certainly there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement *defaming an employee who continues to be an employee.*
>
> 424 U.S. at 710, 96 S.Ct. at 1165. (Emphasis added.)

■ In the instant case, appellant's employment with the Memphis school system was not terminated. She was merely transferred to another school without a termination of employment or reduction in compensation. A transfer under the circumstances of this case does not give rise to a due process right. Accordingly, we reject appellant's claim that her transfer and recorded reprimand deprived her of a "liberty" interest protected by the fourteenth amendment. *See also Lake Michigan College Fed'n of Teachers v. Lake Michigan Community College,* 518 F.2d 1091, 1097 (6th Cir. 1975), *cert. denied,* —— U.S. ——, 96 S.Ct. 3189, 49 L.Ed.2d 1197 (1976); *Blair v. Board of Reg.,* 496 F.2d 323, 324 (6th Cir. 1974).

Appellant's arguments indicate an "interest in reputation" and not "any legal *guarantee* of present enjoyment of reputation" under Tennessee law. The Supreme Court stated in *Paul, supra*:

> But the interest in reputation alone which respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent *any legal guarantee of present enjoyment of reputation* which has been altered as a result of petitioners' actions. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" or "property" recognized by state or federal law, nor has it worked any change of respondent's status as theretofore recognized under the State's laws. *For these reasons we hold that the interest in reputation asserted in this case is neither "liberty" nor "property" guaranteed against state deprivation without due process of law.*

Respondent in this case cannot assert denial of any right vouchsafed to him by

---

**3.** In a case involving a complete termination of employment, the Supreme Court held that there must be a "public disclosure" of the charges or reasons for discharge. *See, Bishop, supra,* 426 U.S. at 348, 96 S.Ct. 2074.

the State and thereby protected under the Fourteenth Amendment. That being the case, *petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any "liberty" or "property" interests protected by the Due Process Clause.*

(Emphasis added.) 424 U.S. at 711, 96 S.Ct. at 1165.

Whatever the result of this appeal might have been prior to the decision of *Paul v. Davis, supra,* clearly it controls our decision on the reputation issue in this case.

The result we reach in the present case is consistent with the decision of the Supreme Court in *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). There, the Court held that suspension from school, based upon charges of misconduct, could trigger the procedural rights of the fourteenth amendment. Although the Court noted that charges of misconduct could damage seriously a student's reputation, 419 U.S. at 574–75, 95 S.Ct. 729, the Court relied on rights guaranteed by state law. The law of the State guaranteed a right upon all children to attend school. Suspension of a child resulted in a deprivation of that right. *See also Paul,* 424 U.S. at 708, 96 S.Ct. 1155.

■ It is the rule of this Circuit that judicial review in actions of school authorities involving the administration of State Teacher Tenure Laws is in the State courts. Federal court jurisdiction exists only in cases involving deprivation of rights delineated by this court in *Orr v. Trinter* 444 F.2d 128, 134 (6th Cir. 1971), *cert. denied,* 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972).

■ Plaintiff has failed to avail herself of remedies available to all tenured teachers under the comprehensive Tennessee statute on Teacher Tenure, T.C.A. §§ 49–1401 *et seq.* Copies of the written charges were furnished to her in compliance with T.C.A. § 49–1414. She was entitled to a due process hearing before the Board of Education, T.C.A. § 49–1416, a right which

she did not pursue. The State statute provides for judicial review de novo in the State Chancery Court, with a right of appeal to the Supreme Court of Tennessee. T.C.A. § 49–1417. Thus, the Tennessee statute provides for procedural due process for tenured teachers. State judges, like federal judges, are bound by the provisions of the Constitution of the United States and the decisions of the Supreme Court in *Roth* and *Sindermann.* If a State court fails to follow these decisions, the decision of the Supreme Court of Tennessee, like any decision of this court, is reviewable by the Supreme Court of the United States.

With procedural due process available to her in the State courts of Tennessee, plaintiff elected not to avail herself of procedures in State courts, which have jurisdiction, and undertake to make a federal case out of this litigation. *Compare, Graves v. Sneed,* 541 F.2d 159 (6th Cir. 1976); *Ohio Inns, Inc. v. Nye,* 542 F.2d 673 (6th Cir. 1976).

■ Section 1983 was never intended as a catch-all statute under which myriads of suits, traditionally within the exclusive jurisdiction of state courts, may be filed in federal courts, in the absence of a showing of deprivation of a constitutional right. Plaintiff's right of action is within the exclusive jurisdiction of the courts of Tennessee. Under *Yoakum, supra,* 201 Tenn. at 195, 297 S.W.2d 635, plaintiff could establish in the State courts that action of the Board of Education was arbitrary or capricious. Additionally, plaintiff might establish a claim for defamation under the laws of Tennessee.

Our conclusion is in accord with the Supreme Court's emphasis in *Bishop, supra,* on the scope of permissible actions under Section 1983:

The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be

construed to require federal judicial review for every such error. In the absence of any claim that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.

426 U.S. at 349, 96 S.Ct. at 2080.

Accordingly, the judgment of the District Court is affirmed.