David J. MASON, Plaintiff,

v.

W. Graham CLAYTOR, Jr., Secretary of the Navy, Alan K. Campbell, Chairman, U. S. Civil Service Commission, and Henry J. Broderick, Defendants.

Civ. A. No. 77–0995.

United States District Court, District of Columbia.

Sept. 28, 1978.

Irving Kator, Washington, D. C., for plaintiff.

Stephen S. Cowen, Asst. U. S. Atty., Arlington, Va., for defendants.

## MEMORANDUM

SIRICA, District Judge.

This action is before the Court on defendants' motion to dismiss, or in the alternative, for summary judgment, and on plaintiff's motion for partial summary judgment. There are no material facts which are the subject of genuine dispute.

The plaintiff, David J. Mason, is a GS–15 civilian employee of the Department of the Navy, where he is head of the Long-Range Planning Branch of the Naval Air Systems Command (NAVAIR). In 1975, Mr. Mason was named in an informal agency complaint as one of several persons who had discriminated against a female NAVAIR employee on account of her sex. Eventually, the complaint having been processed through the full range of agency Title VII procedures, the Navy Department rendered a final decision pursuant to 5 C.F.R. § 713.-221. The decision, issued on behalf of the Secretary of the Navy by the vice-chairman of the Navy's Employee Appeals Review Board (EARB), found that the complainant had been discriminated against on account of her sex and named Mr. Mason as the discriminator.

In this action Mason's basic claim is that Civil Service Commission Regulations afforded him only extremely limited rights of participation in the proceedings leading to the final agency decision which found him to have been a discriminator, and that he has therefore been deprived of liberty and property without due process of law in violation of the fifth amendment to the Constitution. The Secretary of the Navy and the Chairman of the Civil Service Commission are named as defendants in their official capacities. The EARB official who signed the final agency decision is sued individually for damages in the amount of $500,000. Plaintiff also seeks an order expunging the findings of his discrimination and all references to him as a discriminator from Navy records, retroactively promoting him to a GS–16 position, and requiring the Civil Service Commission to establish procedures for the full participation of alleged discriminating officials in agency discrimination hearings.

## I. *Background Facts.*

The 1975 complaint alleged that Mason discriminated against one Diana Gutmann, an employee under his supervision, in connection with her application for promotion to a GS–9 position in NAVAIR. Following a preliminary investigation of the complaint, NAVAIR issued a "letter of requirement" to Mason and another supervisor named in the Gutmann complaint. The issuance of the letter is characterized by the defendants as "an informal disciplinary action." The brief letter alluded to a "perception of bias" within the command against females without college degrees. The letter noted the importance of correcting such perceptions and instructed: "Please provide a plan of action that is aimed at correcting this perception." NAVAIR also cancelled the proposed job selection involved in the Gutmann complaint, and directed that the selection process begin again, utilizing a selection board without the participation of persons, including Mr. Mason, who had been involved previously.

In December 1975, NAVAIR's Equal Employment Opportunity (EEO) office issued a proposed disposition of the Gutmann complaint containing a finding of no discrimination. Ms. Gutmann then requested a hearing on her discrimination complaint, and hearings were held before a Civil Service Commission hearing examiner in February 1976. Pursuant to official Commission policy applicable at the time, Mr. Mason, as one of the alleged discriminating officials, did not have the right to attend the hearings (although he did appear as a witness), was not permitted to call or cross-examine witnesses, and was not permitted to be represented by counsel during his own testimony.[1]

The hearing examiner issued a recommended decision of no discrimination on account of sex on June 10, 1976. The decision was then forwarded to the Secretary of the Navy for a final agency decision pursuant to 5 C.F.R. § 713.221, which provides, in pertinent part:

(a) The head of the agency, or his designee, shall make the decision of the agency on a complaint based on information in the complaint file. . . .

. . . . .

(2) When there has been a hearing on the complaint, the decision letter shall transmit a copy of the findings, analysis, and recommended decision of the complaints examiner under section 713.218(g) and a copy of the hearing record. The decision of the agency shall adopt, reject or modify the decision recommended by the complaints examiner. If the decision is to reject or modify the recommended decision, the decision letter shall set forth the specific reasons in detail for rejection or modification.

The EARB, as the Secretary's designee, then reviewed the record and, over the signature of defendant Broderick, issued the final agency decision on the Gutmann complaint on August 27, 1976. The decision was signed by Broderick in his capacity as acting chairman of the EARB. It agreed with the recommended decision as to all alleged discriminating officials except Mr. Mason. With regard to him, the final decision rejected the examiner's decision, finding that Ms. Gutmann had not been given full and fair consideration for the position in question. After analyzing the central facts in the hearing record, the decision concludes that sex had been a factor in Mason's consideration of Gutmann for the position.[2] The decision also noted that "we concur" with the issuance of the letter of requirement to Mason following the initial investigation of the complaint.

Defendant Broderick, again acting on behalf of the Secretary of the Navy, forwarded the final decision to the NAVAIR Commander together with a memo which stated:

1. At some point after the hearings, but before this action was filed, plaintiff apparently requested access to the Gutmann investigative file (including witness statements), the transcript of the February hearings, and the hearing examiner's recommended decision. It appears that this request was denied pursuant to then existing Civil Service Commission policy. A discovery request for the same materials later became the subject of a motion to compel in this action.

On February 20, 1978, after the instant motions were filed, the Civil Service Commission adopted new policies regarding the participation of alleged discriminating officials in the EEO complaint process. Civil Service Commission, Federal Personnel Manual Letter 713–482. This statement of policy generally provides federal employees who are alleged to be discriminators much fuller rights of notice and participation than they had previously been accorded. These include the right to respond to charges at several stages in the complaint process, the right to counsel during testimony, and, under certain circumstances, the right of access to the complaints file.

2. The crucial paragraph of the decision states:
h. We find that is was Mr. Mason's desire not only to fill the position with an experienced person at the highest possible grade, but it was also his intent to fill the position with a male with a college degree. In light of the foregoing, we conclude that sex was a factor in Mr. Mason's improperly restricting consideration for the position at the GS–12 level and denying you full and fair consideration for that position. We therefore make a finding of discrimination in regard to Mr. Mason's disparate treatment of you.

In light of our finding of sex discrimination . . . you are requested to take the following action:

a. In the event the position is filled, ensure that a board is established to re-evaluate the original candidates without Mr. Mason's involvement; a supervisory appraisal is completed on Ms. Gutmann by Mr. Mason and reviewed by a higher supervisory official; and she is given full and impartial consideration along with other highly qualified candidates for the position in question before selection is made.

b. Take action as deemed appropriate to ensure Mr. Mason's understanding of and adherence to the principles and objectives of the Equal Employment Opportunity and Merit Promotion Programs in the future.

Defendant's Motion to Dismiss, or In the Alternative, for Summary Judgment, Exhibit N. In a memorandum dated September 22, 1976, the NAVAIR Commander replied to the request, stating:

This Command considers the Letter of Requirement of 10 July 1975 adequate disciplinary action against Mr. Mason and does not intend to take any further action. Since July 1975, Mr. Mason has attended four EEO training courses or seminars and three management psychology courses. Mr. Mason will continue to be enrolled in all applicable seminars to ensure his understanding of and adher-

ence to the principles and objectives of the EEO and Merit Promotion Programs. *Id.,* Exhibit O.

II. *Plaintiff's Claims.*

Plaintiff's amended complaint alleges that Broderick's findings of discrimination against him were false, and that because Broderick made the decision "public", he was unfairly stigmatized and given a "badge of infamy." Because this stigmatization was imposed without a hearing in which he could fully participate, and because of the alleged effects of this stigmatization on his federal employment,[3] plaintiff claims that he has been deprived of liberty and property without due process of law. He also claims: (1) that defendant Broderick's actions in promulgating the agency's final decision amounted to a conspiracy to deprive him of his civil rights in violation of 42 U.S.C. § 1985(3); and (2) that the Department of the Navy acted arbitrarily and capriciously in naming him a discriminating official without according him due process of law in violation of the Administrative Procedure Act.

III. *Defendant Broderick's Immunity Defense.*

In *Butz v. Economou,* the Supreme Court held that "in a suit for damages arising from unconstitutional action, federal executive officials exercising discretion are entitled only to the qualified immunity specified in *Scheuer* [*v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)],

---

**3.** Specifically, plaintiff's complaint alleges that "his opportunity for career advancement with the Navy Department has been terminated, he has been denied a promotion, [and] his opportunities for employment in other Federal agencies have been lost . . . ." Amended Complaint at 6. It appears that plaintiff's EEO performance evaluation was lower for the period following the finding of discrimination than it had been for the period preceding the finding. Plaintiff's motion papers also state that he has not been permitted to sit on selection boards since the finding, a fact not disputed by defendants.

Defendants do contend, however, that there is no evidence to support plaintiff's claim of an adverse effect upon plaintiff's promotion opportunities. With regard to the specific promo-

tion which plaintiff claims he was denied on account of the discrimination finding, the Court finds that there is no genuine factual dispute that the position was actually filled on a priority consideration basis. Plaintiff was, therefore, effectively ineligible for the position. *See* Defendants' Statement of Material Facts, para. 18.

In light of the Court's view of the other legal issues presented by plaintiff's claim, it need not determine exactly how the discrimination finding has impacted on his career, whether the defamation was made public within the meaning of *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), or whether the defamation was of the requisite nature, *see Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 193, 562 F.2d 701, 712 (1977).

subject to those exceptional situations where it is demonstrated that absolute immunity is essential for the conduct of the public business." —— U.S. ——, ——, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). Although a substantial argument could be made here that defendant Broderick's allegedly unconstitutional actions were performed within the scope of quasi-judicial duties and that, under *Butz,* he should be accorded absolute immunity, *see id.* at —— ——, 98 S.Ct. 2894, the Court need not address that question because it is quite clear that plaintiff's damage claim is barred by Broderick's qualified immunity. As the Supreme Court stated in *Butz*:

> [T]he Court recognized in *Scheuer* that damage suits concerning constitutional violations need not proceed to trial, but can be terminated on a properly supported motion for summary judgment based on the defense of immunity. See 416 U.S., at 250, 94 S.Ct. 1683. In responding to such a motion, plaintiffs may not play dog in the manger; and firm application of the Federal Rules of Civil Procedure will ensure that federal officials are not harassed by frivolous lawsuits.

Although the Court does not view this lawsuit as frivolous, the same cannot be said regarding the claim for damages against defendant Broderick.

First, it should be noted that in response to the motion for summary judgment on the immunity defense, which was supported by an affidavit from defendant Broderick, plaintiff submitted an eleven-line opposition concluding: "in a Motion to Dismiss by the defendant, or for Summary Judgment, the plaintiff's averments must be taken as true and if so, there are fact situations which must be determined by trial to ascertain whether defendant Broderick is in fact immune to a damage suit." Unfortunately for plaintiff, practice under Rule 56 of the Federal Rules of Civil Procedure is otherwise. Rule 56(e) provides: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Here, plaintiff has maintained silence in the face of defendant's affidavit asserting a good faith, reasonable belief in the lawfulness of his actions.

■ Second, although summary judgment should not be too quickly awarded where factual issues turn on questions of intent, motive, or state of mind, the only legal claim stated against Broderick is that he promulgated the Navy's final decision, reversing the hearing examiner and naming Mason as a discriminating official, without first affording him a hearing. In this regard, however, Broderick clearly did exactly what is mandated by applicable Civil Service Commission and Navy regulations, and what is everyday practice in hundreds of federal agencies. The Court finds that there is no genuine issue of material fact as to the good faith of defendant Broderick in making the final agency decision without affording plaintiff a hearing. He is protected by official immunity and the claims against him will be dismissed.[4]

## IV. *Plaintiff's Due Process Claim.*

■ In the by now familiar two-step analysis used in determining whether a person has been deprived of life, liberty or property without due process of law, the Court must first determine whether any constitutionally cognizable liberty or property interest is implicated. If so, it is only then that the Court will proceed to determine what process was due under the circumstances, and whether the complainant has been accorded less than the requisite degree of procedural protection. *See, e. g.,*

---

4. With regard to plaintiff's claim under 42 U.S.C. § 1985(3), which is apparently stated against defendant Broderick only, the Court also notes that plaintiff has not stated a claim upon which relief could be granted. Plaintiff's complaint contains not even a hint of an allegation of a class-based discrimination which is an essential element of a 1985(3) cause of action. *See Griffin v. Breckenridge,* 403 U.S. 88, 101–03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

*Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 190, 562 F.2d 701, 709 (1977).

Plaintiff claims that he has been deprived of both liberty and property within the meaning of the fifth amendment by virtue of a government defamation. The starting point for the Court's analysis must be the Supreme Court decision in *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). In *Paul,* the Court modified[5] its views stated in cases like *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), and *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969), to hold that mere defamation or stigmatization of an individual by the government, no matter how severe, is insufficient to trigger the procedural guarantees of the due process clauses. Rather, said Mr. Justice Rehnquist speaking for a five-member majority, there must be a distinct alteration of a right or status previously recognized by law in order to invoke such guarantees. 424 U.S. at 711, 96 S.Ct. 1155. The Court reexamined several of its landmark due process decisions to demonstrate their consistency with this "stigma plus" requirement. With regard to *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), for example, the Court emphasized that the sort of defamation involved there was entitled to due process protection only because it occurred "in the course of the termination of employment." *Id.* at 709–10, 96 S.Ct. at 1165. "Certainly," the Court concluded, "there is no suggestion in *Roth* to indicate that a hearing would be required each time the State in its capacity as employer might be considered responsible for a statement defaming an employee who continues to be an employee." *Id.* at 710, 96 S.Ct. at 1165. In *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27

L.Ed.2d 515 (1971), the *Paul* Court found the crucial fact—the distinct alteration of status—to be that the plaintiff had not only been injured by a government defamation, but had been denied the right to buy liquor in the state as well. And in *Bell v. Burson,*[6] where the state had revoked a driver's license, and *Morrissey v. Brewer,*[7] where a grant of parole was withdrawn, the *Paul* Court found two more cases where

> as a result of the state action complained of, a right or status previously recognized by state law was distinctly altered or extinguished. It was this alteration, officially removing the interest from the recognition and protection previously afforded by the State, which we found sufficient to invoke the procedural guarantees contained in the Due Process Clause of the Fourteenth Amendment.[8]

424 U.S. at 711, 96 S.Ct. at 1165.

█ In the instant case, the plaintiff has pointed to no distinct and official alteration of status coupled with the alleged defamation. In fact, it appears that the only direct *official* actions taken against Mr. Mason as a result of the final Gutmann decision were fairly innocuous. First, NAVAIR was instructed that Mason should not be involved with any selection board dealing with the disputed position, and that he should complete an appraisal of Ms. Gutmann subject to the review of a higher supervisory official. Second, the agency requested that NAVAIR take appropriate action "to ensure Mr. Mason's understanding of and adherence to the principles and objectives of the Equal Employment Opportunity and Merit Promotion Programs in the future." With respect to the first requirement, NAVAIR responded that these actions had been taken at the counselling stage of the complaint. And as to the recommendation

---

5. Indeed, the District of Columbia Circuit has commented that *Paul* "seriously undermined if not altogether obliterated the protection previously accorded one's general reputation in the community irrespective of any related interest in employment." *Mazaleski v. Treusdell,* 183 U.S.App.D.C. 182, 193, 562 F.2d 701, 712 (1977).

6. 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).

7. 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

8. The Supreme Court notes that its analysis of state officials' actions under the fourteenth amendment and of federal action under the due process clause of the fifth amendment would be identical. *See* 424 U.S. at 702 n.3, 96 S.Ct. 1155.

of "appropriate action", the command stated that it considered the July 1975 letter of requirement "adequate disciplinary action against Mr. Mason and does not intend to take any further action." NAVAIR noted that the letter of requirement had resulted in Mason's attending four EEO courses and three management psychology courses.

Even disregarding the fact that no new official actions against Mr. Mason resulted from the discrimination finding, it is clear that even the actions taken at the counselling stage of the complaint did not constitute the distinct alteration of a right or status comprehended by *Paul v. Davis.* Mr. Mason has retained his federal employment, his GS–15 position, and all rights accorded him under applicable federal employment statutes, regulations, and personnel policies.[9] In the wake of *Paul,* lower federal courts have rejected due process claims based on alterations of status far more substantial than those outlined above. *See Moore v. Otero,* 557 F.2d 435 (5th Cir. 1977) (stigma imposed on policeman plus transfer from corporal to police patrolman insufficient); *Sullivan v. Brown,* 544 F.2d 279 (6th Cir. 1976) (transfer of teacher from one school to another plus allegations of misconduct insufficient); *Harris v. Harvey,* 436 F.Supp. 143 (E.D.Wis.1977) (temporary suspension with pay plus defamation insufficient).

None of the other alleged effects of the defamation occasioned by the final agency decision—the later denial of a promotion application,[10] the lowered EEO rating, the fact that Mason has not been asked to sit on selection boards, and the unspecified impact on his career and federal employment prospects generally—can in any way be deemed *distinct* alterations of a right or status *officially* imposed in conjunction with or as a result of the defamation. The injuries complained of by plaintiff are, at best, non-official, collateral effects of the agency's official actions. Plaintiff remains as free as before to compete for agency promotions or to apply for employment with other federal agencies.

The Court therefore concludes that *Paul v. Davis* compels a finding that plaintiff has suffered no deprivation of liberty or property which would have entitled him to the procedural protections of the fifth amendment's due process clause. An Order granting defendants' motion for summary judgment and dismissing the action accompanies this Memorandum.

---

**9.** With respect to plaintiff's claimed deprivation of a protected property interest, the Court therefore finds that he has alleged no effect on such an interest—standing apart from the defamation—even arguably cognizable under the due process clause. As noted in the text, the *official* impact on his vested interest in a tenured federal position has been de minimis. Unofficial, collateral effects of a government defamation resulting from changed perceptions of the injured party are quite relevant to determining whether a constitutionally cognizable defamation has taken place, *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), but such effects can neither provide the distinct, and official alteration of status required by the *Paul v. Davis* liberty analysis, nor are they relevant to determining whether the government has deprived someone of a property right. Moreover, under *Paul,* there is apparently no property interest in one's reputation which is itself entitled to procedural protection.

**10.** Of course, as explained in note 3, *supra,* the government has established that the denial of the promotion was unrelated to the defamation or to Mason's qualifications.