Peter CAFANO

v.

Nicholas CIMMINO, individually and as Clerk of the Superior Court for the Judicial District of New Haven.

Civ. A. No. N 79–100.

United States District Court, D. Connecticut.

March 27, 1980.

David M. Reilly, Anthony J. Lasala, Reilly, Peck, Raffile & Lasala, New Haven, Conn., for plaintiff.

Peter W. Gillies, Deputy Atty. Gen., Barney Lapp, Paul M. Shapiro, Asst. Attys. Gen., Carl R. Ajello, Atty. Gen., Hartford, Conn., for defendant.

## RULING ON MOTION TO DISMISS

ELLEN B. BURNS, District Judge.

Plaintiff, a police officer in the town of Hamden, Connecticut, has brought this action against the defendant clerk of the Superior Court for the Judicial District of New Haven, Connecticut, under the provisions of 42 U.S.C. § 1983. Jurisdiction is claimed under the provisions of 28 U.S.C. §§ 1331 and 1343.

Plaintiff claims that the report of the Honorable George A. Saden, a judge of the Connecticut Superior Court acting as a one-man grand jury under the provisions of § 54–47 of the Connecticut General Statutes, concerning the actions of certain members of the Hamden Police Department and others, including the plaintiff, in the

handling of an alleged shop–lifting incident and the release of the report to the press violated the plaintiff's constitutional rights under the First, Fifth, Sixth and Fourteenth Amendments to the Constitution. Plaintiff alleges that the grand jury proceeding was defective in that all testimony was not recorded, intimidating statements of officials were stricken from the record and plaintiff was not informed of his right to counsel at the proceeding or permitted to have counsel present. Plaintiff also alleges that Judge Saden abused his statutory authority by including in his report accusations of criminal conduct and judgments concerning the credibility of witnesses, rather than confining its contents to findings of the presence or absence of probable cause to believe a crime had been committed.

Accordingly, plaintiff seeks a permanent injunction restraining the defendant or his agents, servants or employees from causing said report to be released for any prosecution to be instituted against the plaintiff for acts arising from incidents described in the complaint, or restraining him from accepting any warrant or indictment or record of arrest of the plaintiff based on Judge Saden's report; a declaratory judgment that institution of any such prosecution is unlawful and unconstitutional; an order directing the defendant to expunge Judge Saden's report from the Superior Court records; an order directing the defendant to give public notice of an order of this Court expunging the report as illegally filed; costs, including a reasonable attorney's fee, and such other relief as may appear just to the Court.

Defendant, pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, has moved for dismissal of the complaint for the following reasons: (1) The Court does not have subject–matter jurisdiction inasmuch as the defendant has no responsibility for criminal prosecutions. There is no justiciable controversy between the plaintiff and the named defendant and, in the absence of a proper defendant, the request for a declaratory judgment is improper; (2) the complaint fails to state a claim upon which relief can be granted; (3) the Court should abstain from hearing this matter which seeks an injunction against a criminal prosecution, based upon principles of equity, comity and federalism. For the reasons articulated hereinafter the motion to dismiss is granted.

 Plaintiff seeks a declaratory judgment under 28 U.S.C. § 2201 declaring that any prosecution instituted against plaintiff based on the report of Judge Saden would be unlawful and unconstitutional. The Court finds a declaratory judgment would be unwarranted on several grounds. First, seeking this relief against defendant Cimmino is inappropriate. Before the Court will make a judgment declaring that a particular action will be illegal, it requires that the person threatening to take that action be a party to the lawsuit and that he be given the opportunity to present the Court with reasons why his proposed actions should not be held illegal. The correct party defendant, so far as this prayer for relief is concerned, would appear to be the state's attorney, the state official who would initiate the prosecution plaintiff seeks to attack. Cf. *Ashenhurst v. Carey*, 351 F.Supp. 708, 712 (N.D.Ill.1972); *Koehler v. Ogilvie*, 53 F.R.D. 98, 102 (N.D.Ill.1971), *aff'd* 405 U.S. 906, 92 S.Ct. 938, 30 L.Ed.2d 777 (1972).

 Furthermore, even if the declaratory judgment had been sought against the proper party, its issuance would still be inappropriate. Subject matter jurisdiction is conferred on the Court by 28 U.S.C. § 2201 only in a case of actual controversy. Absent such controversy, there is no jurisdiction. *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–464, 81 L.Ed. 617 (1936).

> Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment

*Evers v. Dwyer*, 358 U.S. 202, 203, 79 S.Ct. 178, 179, 3 L.Ed.2d 222 (1958), *quoting*

*Maryland Casualty Co. v. Pacific Coal & Oil,* 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941).

■ In the instant case, neither party has presented the Court with any basis to believe that prosecution of plaintiff is imminent or that it is even contemplated. It may well be that the report will never be utilized against plaintiff, which possibility is, in fact, the basis for his third claim for relief, expunction of the report, discussed below. Only when, if ever, prosecution of the plaintiff pursuant to the report appears imminent, would the court have before it a controversy of sufficient immediacy and reality to warrant action.

Plaintiff by his action and the other relief sought asks this federal court to insinuate itself into the gears of the state criminal process and, once there, potentially to jam them by granting the equitable remedy of expunction. If the report were expunged, it could never be used to form the basis of an indictment against plaintiff or other persons named in the report, and the state criminal process would be stopped.

It is settled that

in federal equity cases 'the nature of the violation determines the scope of the remedy,' [citation omitted], but important considerations of federalism are additional factors weighing against [the use of equitable remedies]. Where, as here, the exercise of authority by state officials is attacked, federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.' [citations omitted].

*Rizzo v. Goode,* 423 U.S. 362, 378, 96 S.Ct. 598, 607, 46 L.Ed.2d 561 (1976).

This case is similar to *Rizzo* in that it is a § 1983 action aimed at the conduct of state business. As the court noted in *Rizzo,* "Section 1983 by its terms confers authority to grant equitable relief as well as damages, but its words 'allow a suit in equity only when that is the proper proceeding for redress, and they refer to existing standards to determine what is a proper proceeding.'

*Giles v. Harris,* 189 U.S. 475, 486 [23 S.Ct. 639, 642, 47 L.Ed. 909] (1903) (Holmes, J.)." 423 U.S. at 378, 96 S.Ct. at 607. The *Rizzo* court went on to note that, even where the prayer for equitable relief is not aimed at state criminal proceedings themselves (as it is not here in the sense that there is currently no ongoing criminal proceeding as to this plaintiff), the principles of equity militate heavily against the grant of equitable relief "except in the most extraordinary circumstances." 423 U.S. at 379, 96 S.Ct. at 608. Furthermore, in *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974) the court held that "a major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this Court has recognized . . . ."

The relief requested here would not amount to a continuing intrusion of the type discussed in *O'Shea.* In that case, plaintiffs sought an injunction "aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials" 414 U.S. at 500, 94 S.Ct. at 678, presumably *whenever* those specific occurrences took place during an otherwise valid criminal prosecution against a beneficiary of the injunction. In contrast, the intrusion requested here might be construed to be limited to this one party and involves this one report although, as noted above, the report involves a number of persons other than plaintiff, and expunging of the report would presumably preclude its use with respect to those others named.

■ However, it is the judgment of this Court that the same considerations of equity, comity and federalism that caused the court not to intrude into the administration of the state's criminal laws in *O'Shea* and into the administration of an executive agency in *Rizzo* compel this Court to conclude that this is not a "proper proceeding" (*Rizzo, supra,* 423 U.S. at 378, 96 S.Ct. at 607) for the granting of equitable redress and thus the Court refuses to interfere with

the ongoing exercise of Connecticut's criminal process in this case.

Finally, even if the principles of comity and federalism did not require dismissal of this action, this Court holds that dismissal would be necessary because the complaint fails to state a claim under 42 U.S.C. § 1983.

In order to state a § 1983 claim, the plaintiff must allege a deprivation of his civil rights under color of state law. As deprivations of his civil rights, plaintiff claims violations of his Fourteenth, First, Fifth and Sixth Amendment rights. The claimed violation of the Fourteenth Amendment appears to be deprivation without due process of law of plaintiff's reputation as an honest law–abiding citizen. The other alleged constitutional violations all appear to relate to this basic Fourteenth Amendment claim.

■ The alleged Fifth and Sixth Amendment violations relate to the conduct of the grand jury proceedings. Insofar as those proceedings amounted to a trial of plaintiff, it is claimed he was not afforded a public trial, an attorney, the opportunity to confront witnesses against him or the other safeguards mandated by the Sixth Amendment. To the extent that plaintiff's testimony before the grand jury was compelled and tended to incriminate him, he claims a violation of the Fifth Amendment.

Plaintiff's First Amendment claims are not clearly stated but appear to be that the report's allegedly bad faith criminal accusation has deprived him of his constitutional right to free speech, possibly by denying him a forum in which to speak in his defense.

The Court interprets these claims, taken together, as amounting to a complaint that the publicity given the report, combined with the air of legitimacy afforded it because it was authored by a judge of the Superior Court, in effect constituted the charging of plaintiff with criminal activity, and perhaps his conviction in the public's mind, without his being given the opportunity to defend himself or to confront the witnesses against him.

Of course, the opportunity to defend and to confront witnesses is not constitutionally required unless the "accused" is formally accused by being indicted and faces deprivation of liberty or property as a direct, intentionally punitive consequence of the actions of which he is accused.

Since plaintiff has not been indicted, his lack of opportunity to defend is not a deprivation of his constitutional rights. If he is indicted in the future, his constitutional rights will be protected by the trial process. Therefore this Court holds plaintiff fails to state a claim under 42 U.S.C. § 1983 when he alleges his lack of procedural safeguards afforded at trial.

■ What remains is plaintiff's Fourteenth Amendment claim that his reputation has been damaged. The Constitution does not by its terms protect one's interest in his reputation. If this interest is to be found protectable, it must fall within the definition of liberty or property as these words are used in the Fourteenth Amendment. The Supreme Court has held that a person's interest falls within the scope of the Fourteenth Amendment if the person has an entitlement to that interest which arises from state law or some other source outside the Constitution. *See, e. g., Goss v. Lopez,* 419 U.S. 565, 573–74, 95 S.Ct. 729, 735–36, 42 L.Ed.2d 725 (1975) (entitlement to attend school arising from state law); *Board of Regents v. Roth,* 408 U.S. 564, 576–78, 92 S.Ct. 2701, 2708–09, 33 L.Ed.2d 548 (1972) (no entitlement to continuation of job arising in the case of an untenured state university professor); *Perry v. Sindermann,* 408 U.S. 593, 602–03, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972) (entitlement to continuation in job in the case of an untenured professor might arise from the policies and practices of the state institution); *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971) (entitlement to operate a vehicle on state highways arising from the issuance of drivers' licenses); *Goldberg v. Kelly,* 397 U.S. 254, 262 n. 8, 90 S.Ct. 1011, 1017 n. 8, 25 L.Ed.2d 287 (1970) (entitlement to continued receipt of welfare benefits arising from statutory and administrative standards for eligibility).

In accord with the above cases, the Supreme Court held in *Paul v. Davis*, 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) that "reputation alone, apart from some more tangible interests . . ., is [n]either 'liberty' [n]or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause." In reaching this conclusion, the Court observed that due process protections are invoked when "as a result of the state action complained of, a right or status previously recognized by state law [has been] distinctly altered or extinguished" *Id.* at 711, 96 S.Ct. at 1165. Here, as in *Paul v. Davis*, the law of the state does not extend to plaintiff a legal guarantee of present enjoyment of reputation. In addition, plaintiff does not claim, nor can the court find, any status protected by state law which the action of the state has altered. *Cf. Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971). (status altered as a result of loss of right to buy liquor) Thus plaintiff has suffered no deprivation of anything to which he had an entitlement arising from sources outside the Constitution.

But the entitlement theory is not the only basis for a cause of action under the Due Process Clause. The Supreme Court recognized in *Paul v. Davis, supra*, that there are cases where the stigma resulting from defamatory conduct on the part of state officials has been held actionable under the Due Process Clause on the theory that an individual's liberty is implicated when a governmentally imposed stigma restricts his ability to seek and obtain employment. *See, e. g.,* the cases discussed in *Paul v. Davis*, 424 U.S. at 701–10, 96 S.Ct. at 1160–65; *see also Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (1980).

As the Supreme Court noted in *Paul*, however, in every case where the Court has held the stigma actionable, the plaintiff had either been defamed in the course of termination from his employment, or the defamation was such that the future employment prospects of the plaintiff were greatly reduced. The absence of these employment factors, together with the absence of any exogenous entitlement, were the determinative factors in the *Paul v. Davis* holding that plaintiff had not stated a cause of action under § 1983 and the Due Process Clause.

■ In the case at bar, plaintiff has made no allegation that his employment has been terminated or that he has been foreclosed from future employment. Instead, all the record reflects is that plaintiff was relieved of duty with no financial loss to himself pending a hearing before the Board of Police Commission on charges stemming from his "actions as stipulated in the findings of a one man grand jury handed down April 3, 1979. . . ." Plaintiff's exhibit # 1, hearing on preliminary injunction, April 18, 1979.

Since this hearing may result in plaintiff's being cleared of the charges against him and since plaintiff has not shown the requisite interference with employment to bring his complaint within the scope of the protection of the Due Process Clause (accord, *Taylor v. Nichols*, 409 F.Supp. 927, 935 (D.Kans.1976)), this Court holds that plaintiff has failed to state a claim under 42 U.S.C. § 1983 by his allegations that his reputation has been harmed. The claim he makes is actionable, if at all, only under state tort law. *Cf. Moore v. Otero*, 557 F.2d 435, 437–38 (5th Cir. 1977); *Sullivan v. Brown*, 544 F.2d 279, 283–84 (6th Cir. 1976); *Colaizzi v. Walker*, 542 F.2d 969, 973–74 (7th Cir. 1976); *Stretten v. Wadsworth Veterans Hospital*, 537 F.2d 361, 365–66 (9th Cir. 1976); *Sorenson v. Zapien*, 455 F.Supp. 1207 (D.Colo.1978); *Poirier v. Hodges*, 445 F.Supp. 838 (M.D.Fla.1978).

In conclusion, then, plaintiff has failed to show the immediacy and reality of controversy which are prerequisite to a declaratory judgment, and he has failed to state a claim under § 1983. Accordingly, defendant's motion to dismiss is granted.

SO ORDERED.